STATE OF NEBRASKA, APPELLEE, V. MICHAEL LANG,
APPELLANT.

272 N. W. 2d 775

Filed December 20, 1978.   No. 42083.

Thomas A. Vakulskas, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and RIST, District Judge.

BRODKEY, J.

This is the second appearance of this case in this court.  In 1976, the appellant, Mike Lang, also known as Michael Lang, was tried in the District Court for Dakota County on a charge of assault with intent to inflict great bodily harm, and was found guilty by a jury.  The court imposed a sentence of 5 to 8 years imprisonment, and Lang filed a direct appeal to this court.  We affirmed defendant's conviction and

sentence in State v. Lang, 197 Neb. 47, 246 N. W. 2d 608 (1976); and the general factual background for the occurrences in question which took place in the parking lot of a liquor store in South Sioux City, Nebraska, on the night of September 22, 1975, are set forth in our opinion in that case.

Thereafter, on December 7, 1977, the defendant, acting pro se, filed a Motion to Vacate and Set Aside Conviction and Sentence under the Nebraska Post Conviction Act, in the Dakota County District Court; and on that same date the court appointed Thomas A. Vakulskas, attorney at law, to represent the defendant in his motion. Mr. Vakulskas had represented the defendant in his prior appeal to this court, but was not the attorney who represented the defendant in his original trial.

In his motion to vacate and set aside his judgment and conviction, defendant alleges he was denied effective assistance of counsel because his trial counsel, Joseph E. Marsh, failed to interview and subpoena witnesses known to him that would corroborate the defendant's version of what took place on the night of September 22, 1975. A full evidentiary hearing was held on the motion on January 18, 1978, and on March 24, 1978, the court entered its order denying defendant's motion. Defendant then perfected this appeal to this court.

In defendant's original trial, in which he was convicted of the offense of assault with intent to inflict great bodily injury, the main witness for the State was the alleged victim, Gene Boykin, who testified as to his version of what took place with reference to the shooting in the parking lot of the liquor store on the night in question. Several witnesses confirmed his version of the affair, and one witness, Brenda Frazier, confirmed the defendant's version. No other witnesses were called for the defense. However, at the evidentiary hearing held in the post conviction proceeding, the county attorney for Dakota

County stipulated with defendant's attorney for the admission into evidence of affidavits of eight persons who allegedly witnessed the incident on September 22, 1975, and stipulated that the eight affiants would testify in conformity with the contents of their respective affidavits, if called. The county attorney also waived his right to cross-examine the eight affiants. In this connection we feel compelled to note that by virtue of the above stipulation, the county attorney effectively denied to the trial court, and also to this court on review, an opportunity to weigh fully the possible prejudice to the defendant of the alleged failure of defense counsel to interview and summon witnesses. However, we are bound by the record before us and cannot supply what is not contained therein.

The affidavits of two affiants, Dennis Red Owl and Robert Cavanaugh, state that they were in a bar in Sioux City, Iowa, at approximately 7 p.m., on September 22, 1975, when they were approached by Tommy Downs, Gene Boykin, and two other unidentified men. Downs and Boykin asked Red Owl and Cavanaugh "where is Mike Lang?" Dennis Red Owl told Downs and Boykin that Mike Lang was at Mahon's Liquor Store in South Sioux City, Nebraska. While the group was talking "Tommy Downs pulled a revolver from his waist and gestured in a menacing manner." Tommy Downs, Gene Boykin, and the two unidentified men then left in two cars for Mahon's Liquor Store. The group arrived at Mahon's and after approximately 10 minutes Mike Lang arrived with three or four other persons in Kenny Frazier's car. Lonnie John, Laverne Taylor, and Larry DeGroot were also present at the liquor store when Downs and Boykin first arrived. In Kenny Frazier's car, in addition to Kenny, were Mike Lang, Leilla Fields, Ted Mallory, and Brenda Frazier. Kenny Frazier left the car and went inside Mahon's Liquor Store. The affidavits of Kenneth Frazier,

Leilla Fields, Ted Mallory, Lonnie John, Laverne Taylor, Larry DeGroot, Dennis Red Owl, and Robert Cavanaugh were all substantially to the same effect as to occurrences in the parking lot of Mahon's Liquor Store. Those events, as related in the affidavits, were that Mike Lang got out of the car and as he proceeded towards the store was confronted by Boykin and Downs. Boykin struck Lang and a scuffle on the ground began. Downs then pulled a revolver from his waist and fired two shots toward Lang and Boykin. Brenda Frazier then ran towards Downs who knocked her to the ground and aimed his revolver at her. Ted Mallory then pulled a revolver and fired three shots at Downs, causing him to drop his revolver. Mallory emptied his revolver and reloaded it as Boykin and Downs ran behind the liquor store. Lang, Brenda Frazier, Kenny Frazier, and Mallory then left the scene in their car. Affiants all stated in their affidavits that if they had been subpoenaed or permitted to testify they would have testified at the defendant's trial to the facts as set out in their affidavits.

The standard for determining whether or not counsel for a defendant in a criminal prosecution has provided adequate representation is set out in State v. Leadinghorse, 192 Neb. 485, 222 N. W. 2d 573 (1974): "Our present test would be that trial counsel perform at least as well as a lawyer with ordinary training and skill in the criminal law in his area, and that he conscientiously protect the interests of his client." See, also State v. Fowler, 201 Neb. 647, 271 N. W. 2d 341 (1978); State v. Bartlett, 199 Neb. 471, 259 N. W. 2d 917 (1977); State v. Nokes, 192 Neb. 844, 224 N. W. 2d 776 (1975). We have also held that prejudice is an essential element of a claim of ineffective assistance of counsel. Defendant must show that he was prejudiced in the defense of his case by the actions or inactions of defense counsel. State v. Bartlett, *supra*; State v. Kelly, 190 Neb. 41, 205 N. W.

2d 646 (1973). See, also, Morrow v. Parratt, 574 F. 2d 411, at 413 (8th Cir., 1978).

The defendant testified at the post conviction hearing that he told his trial counsel at every meeting the names of witnesses he wanted called in his behalf. He testified that he told his trial counsel the names of "Kenny Frazier, Ted Mallory and Dennis Red Owl and Bobby Cavanaugh and Lonny John and I gave him LeRoy Thomas, Larry DeGroot, Earl Mayo, and Laverne Taylor and Leilla and Brenda Frazier and Leroy Brown and Terry Thomas," as eyewitnesses to the incident in Mahon's parking lot on September 22, 1975. The defendant also testified that it was his understanding that his trial counsel was going to subpoena these people to testify in his behalf.

However, defendant's trial counsel testified at the post conviction hearing that: "These names in Mr. Lang's affidavit now, their names were never mentioned to me at any stage of the proceedings." He further testified that he did not contact Lloyd Spince, Debbie Downs, Larry Carpenter, or LeRoy Thomas because "[t]hose names were never given to me, before the trial at least." An examination of the record of the preliminary hearing reveals that the State's witness, Gene Boykin, testified that Lloyd Spince, Debbie Downs, Larry Carpenter, LeRoy Thomas, Tommy Downs, and Terry Walker were all present at the time of the incident. Defense counsel admitted that other than his cross-examination of the two State's witnesses at the preliminary hearing he did not personally contact anyone to seek additional information.

Although the State's witnesses at the preliminary hearing, Gene Boykin and Terry Walker, testified that Ted Mallory and Kenny Frazier were present with the defendant the night of the incident, defendant's trial counsel testified that he did not issue sub-

poenas for Mallory or Kenny Frazier because they were residents of Iowa.

However, both Nebraska and Iowa have statutes under which the attendance of Mallory and Frazier as witnesses could have been obtained. See section 29-1908, R. R. S. 1943; Iowa Code Ann., §§ 781.14, 781.16 (West, 1977), and Iowa Code Ann., § 819.1 (West, 1978 Special Pamphlet).

Although not formally adopted in this State to the present date, we note that the American Bar Association Standards for Criminal Justice relating to the Defense Function, approved in 1971, provides in section 4.1 as follows: "Duty to investigate. It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty." In McQueen v. Swenson, 498 F. 2d 207 (8th Cir., 1974), the court stated: "We have no doubt that counsel acted in an effective manner as far as the trial judge was able to observe his conduct. The representation involves more than the courtroom conduct of the advocate. The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation in preparation of the case or failed to interview essential witnesses or to arrange for their attendance. * * *." Also, in Morrow v. Parratt, 574 F. 2d 411 (8th Cir., 1978), the court stated: "This court has recently stated that ordinarily a reasonably competent attorney will conduct an in-depth investigation of the case which includes an independent interviewing of the witnesses."

It appears that the names of many possible eye-

witnesses were known to defendant's counsel both from the defendant's preliminary hearing, and also from the defendant himself in conversations with his attorney. Counsel admits he knew of the two witnesses, Ted Mallory and Kenny Frazier, but did not issue subpoenas for them because they were residents of Iowa, and "I figured if they wouldn't come over voluntarily, they weren't going to do us much good anyhow." It also appears from the record that witness Ted Mallory was confined in the Woodbury County Jail in Sioux City, Iowa, at the time of the trial. Witness Frazier in his affidavit states that he "attempted to testify at the trial of Mike Lang, but I was told, that I would not be able to. * * * That I was never interviewed nor did I talk to Mr. Joseph Marsh, although I attempted on more than one occasion to contact him. * * *." There is evidence in the record, however, that Kenny Frazier arrived at the defendant's trial after argument to the jury had begun, but after an approximate one-half hour recess was taken to await his arrival. Nevertheless, on the basis of facts contained in the affidavits stipulated into evidence at the post conviction hearing, it seems clear that had defendant's trial counsel interviewed the witnesses in question he would have discovered evidence helpful to the defendant which would have shown that the State's witness, Gene Boykin, originally provoked the assault, and Boykin and Tommy Downs conspired to assault the defendant before they arrived at the liquor store where the incident took place. He would also have discovered evidence to the effect that the State's witness, Tommy Downs, was in possession of a firearm and was the one who discharged it, not the defendant. We feel that under the facts of this case there should have been an effort on the part of trial counsel to contact witnesses Mallory and Frazier, and, if necessary, to subpoena them to testify at defendant's trial; and the failure to do so was prejudicial to the

defendant.  As was stated in the case of McQueen v. Swenson, *supra*:  "[T]he petitioner must shoulder an initial burden of showing the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to the defendant either on cross-examination or in his case-in-chief at the original trial.  Once this showing is made, a new trial is warranted unless the court is able to declare a belief that the omission of such evidence was harmless beyond a reasonable doubt."

We believe that in this instance defendant's trial counsel failed to perform a function which a reasonably competent attorney would perform, and justice dictates that defendant should be given a new trial where all the witnesses can be heard in his defense. We therefore vacate defendant's conviction and sentence, and remand the cause to the District Court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.