Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/19/2024 09:09 AM CDT

State of Nebraska, appellee, v. Rosario
Betancourt-Garcia, appellant.

___ N.W.3d ___

Filed July 19, 2024.    No. S-23-738.

1. **Postconviction: Evidence: Witnesses: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous.

2. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

3. **Criminal Law: Evidence: Proof.** To establish an alibi defense, a defendant must show (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it was impossible to have been at the place where and when the crime was committed.

4. **Effectiveness of Counsel: Appeal and Error.** When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on direct appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.

5. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

6. **Effectiveness of Counsel: Proof.** To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

7. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

8. **Trial: Effectiveness of Counsel: Appeal and Error.** A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable.

9. **Rules of Evidence: Impeachment: Prior Statements.** Prior inconsistent statements are admissible as impeachment evidence, but they are not admissible as substantive evidence unless they are otherwise admissible under the Nebraska Evidence Rules.

10. **Actions: Appeal and Error.** Unlike the doctrines of claim preclusion and issue preclusion, which involve successive lawsuits, the law-of-the-case doctrine involves successive stages of one continuing lawsuit.

11. ____: ____. When it applies, the law-of-the-case doctrine operates to preclude reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution.

12. ____: ____. The law-of-the-case doctrine promotes judicial efficiency and protects parties' settled expectations by preventing parties from relitigating settled issues within a single action.

Appeal from the District Court for Madison County, MARK A. JOHNSON, Judge. Affirmed.

Jack W. Lafleur, of Moyer, Moyer & Lafleur, for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ.

FUNKE, J.

## INTRODUCTION

This appeal arises from a petition for postconviction relief filed by Rosario Betancourt-Garcia (Betancourt). After an evidentiary hearing, the district court for Madison County, Nebraska, granted Betancourt relief in the form of corrected sentences for two of his convictions. But the district court denied Betancourt's claim that his appellate counsel was ineffective for failing to raise a claim on direct appeal that his trial counsel were ineffective in their handling of his alibi defense and his "misidentification defense." Betancourt appeals that ruling and also argues that he was entitled to an evidentiary hearing on other claims of ineffective assistance of counsel. Because the district court did not err in finding that trial counsel made a reasonable strategic decision in their handling of the purported defenses, and because Betancourt's other claims either resulted in relief or are precluded under the law-of-the-case doctrine, we affirm.

## BACKGROUND

This is the fourth time that we have opined on matters related to Betancourt's convictions.[1] The following summary of the proceedings to date is based on our prior opinions.

### CONVICTIONS AND DIRECT APPEAL

Betancourt was convicted of kidnapping, use of a firearm to commit a felony, and conspiracy to commit kidnapping after his nephew was found bound and gagged in Madison,

---

[1] See, *State v. Betancourt-Garcia*, 310 Neb. 440, 967 N.W.2d 111 (2021); *State v. Betancourt-Garcia*, 299 Neb. 775, 910 N.W.2d 164 (2018); *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016), *abrogated on other grounds, State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020).

Nebraska, on November 15, 2003. Betancourt was subsequently arrested in Texas, but he did not stand trial until over a decade later. At trial, Betancourt testified that he was working 6 days a week or more in Houston, Texas, at the time of the offenses. However, Betancourt's nephew testified that Betancourt was one of two men who kidnapped and threatened to kill him and left him bound and gagged in a shed near Betancourt's former house. The other man involved in the kidnapping also testified to Betancourt's involvement.

Betancourt was sentenced to consecutive terms of life imprisonment for kidnapping and 10 to 30 years' imprisonment, including a mandatory minimum of 5 years' imprisonment, for use of a weapon to commit a felony. Further, the district court treated the conspiracy conviction as a Class II felony and sentenced Betancourt to 30 to 50 years' imprisonment, to be served concurrently with the other sentences.

Betancourt appealed his convictions and sentences, arguing that the district court erred in several regards and that he received ineffective assistance of counsel. We rejected those arguments. We also declined to consider Betancourt's argument that his trial counsel were ineffective in failing to investigate, develop, and present exculpatory evidence to support his alibi defense, because that claim was not assigned in his brief on appeal.[2] But we found plain error in Betancourt's sentence for the conspiracy conviction, which was inconsistent with the statutory framework. As such, we vacated that sentence and remanded the matter to the district court with directions to resentence Betancourt to "life imprisonment" for conspiracy.

On remand, Betancourt was resentenced, without objection, to "life imprisonment without parole."

---

[2] See, e.g., *State v. Boswell*, 316 Neb. 542, 5 N.W.3d 747 (2024) (to be considered by appellate court, error must be both specifically assigned and specifically argued in brief of party asserting error).

## Motion for Postconviction Relief and Appeal of Denial of Evidentiary Hearing

Betancourt then filed a verified petition for postconviction relief. In that petition, Betancourt alleged that his appellate counsel on direct appeal was ineffective for failing to raise several claims of ineffective assistance of trial counsel (layered claims of ineffective assistance of counsel). The district court granted an evidentiary hearing on Betancourt's layered claims of ineffective assistance of counsel, based on the failure to assert an alibi defense, pursuit of a "misidentification defense," and failure to object to Betancourt's sentence for use of a firearm to commit a felony, which should not have included a mandatory minimum. But the district court denied Betancourt's remaining claims without an evidentiary hearing on the grounds that they were insufficiently alleged, were affirmatively refuted by the evidence in the record, or were not examples of ineffective assistance of counsel.

Betancourt appealed the district court's order denying him an evidentiary hearing on his remaining claims. On appeal, we affirmed that order except as to Betancourt's claim that appellate counsel, while serving as trial counsel upon remand for resentencing on the conspiracy conviction, was ineffective for not objecting to the imposition of a sentence of "life imprisonment without parole." Because that sentence was not a valid sentence, we remanded the cause to the trial court for a hearing on Betancourt's sentence for conspiracy.

### Evidentiary Hearing

On remand, the district court held an evidentiary hearing on Betancourt's layered claims of ineffective assistance of counsel regarding his (1) alibi defense, (2) "misidentification defense," (3) sentence for use of a firearm to commit a felony, and (4) sentence for conspiracy. Betancourt testified at the hearing, as did four of the five attorneys (Attorneys 1 through 5) who represented him in these proceedings. That testimony is summarized below as it relates to the parties' arguments on appeal.

Betancourt testified that he moved to Houston 20 days or more before the offenses and that he was working in Houston on November 15, 2003. Betancourt also testified that he advised counsel that his former employer and an employee of his former landlord (the Texas witnesses) were willing and able to testify to that effect. Betancourt similarly testified that he informed counsel that his former neighbor in Madison "could testify" that Betancourt had not lived there "for several months" before the offenses. According to Betancourt, Attorney 2 spoke with the Texas witnesses and learned that their testimony would have been "practically" the same as his. Betancourt acknowledged that he later learned that the Texas witnesses stated they could not place him in Texas on the date of the offenses and also resisted testifying. But Betancourt opined that this was because counsel "threatened" to "put [one of the witnesses] in jail to ensure [her] testimony in the trial" and that "[n]o attorney does that." Otherwise, Betancourt maintained that the Texas witnesses were "still willing" to testify on his behalf.

Attorney 2 did not testify at the hearing. However, the other attorneys all described difficulties in identifying or obtaining testimony from the Texas witnesses, in particular.

Attorney 1, the public defender who represented Betancourt before he hired Attorney 2, testified that Betancourt "didn't have firm dates or people" in terms of his alibi. Attorney 1 described working with Betancourt to "try[] to get somebody" and "attempt[ing] to contact people." But Attorney 1 stated that he ultimately never "got ahold of anybody" who could corroborate that Betancourt was elsewhere at the time of the offenses.

Attorney 3, the public defender who represented Betancourt after Attorney 2 withdrew, testified that he spoke with the Texas witnesses and that they could not testify that Betancourt was in Texas on November 15, 2003. Attorney 3 admitted to telling the landlord's employee that she could be "brought to Nebraska . . . through law enforcement" to testify if necessary.

But Attorney 3 testified that even before he told her this and she became uncooperative, she failed to provide any information beneficial to Betancourt's defense. According to Attorney 3, he eventually discussed the matter with Betancourt and informed him that given the prospective witness' inability to provide an alibi and her reluctance to testify, "it wouldn't be beneficial to bring her up here forcibly because that would just make things worse for her testimony."

Attorney 3 testified similarly that he did not attempt to depose the landlord's employee, because even if she had testified that Betancourt was in Texas before and after the offenses, that information would not have been helpful to the case, because the testimony at the trial was going to be that Betancourt and the codefendant "left Nebraska and traveled . . . down to Kansas or down to Texas" immediately after the offenses. As such, Attorney 3 reasoned that the "best trial defense" was to put Betancourt "somewhere else on the date of the incident rather than other days in November." In particular, Attorney 3 noted the danger of the witness' being called and "corroborating the co-defendant."

Attorney 3's deputy, Attorney 4, also testified that the Texas witnesses could not place Betancourt in Texas on November 15, 2003, or for such a length of time that it was impossible for him to have been in Madison when the offenses were committed. Further, Attorney 4 testified that the landlord's employee hired an attorney "to try to avoid coming up to testify" and that due to the passage of time, Betancourt's former employer no longer had the paperwork pertaining to his employment. According to Attorney 4, she was concerned that "forcibly [bringing the Texas witnesses] up . . . might make it get worse," and her superior, Attorney 3, discussed the "dangers of an alibi defense" with Betancourt. But Attorney 4 acknowledged that Betancourt's claim that he was misidentified was "essentially the same" as his alibi defense. Attorney 4 testified that it would have been "very difficult" to argue

that Betancourt was misidentified without alibi witnesses, given that his nephew and codefendant had identified him.

Attorney 4 also acknowledged that Betancourt's former neighbor in Madison was not called to testify at the trial despite her affidavit stating that as of November 15, 2003, Betancourt "had not been living at his house for at least three months." However, Attorney 4 indicated that she viewed this information as consistent with the State's evidence at trial that Betancourt "had not lived in that house for an extended period."

Attorney 5, who represented Betancourt on appeal, testified that he did not consider trying to "make an appeal issue" out of the failure to call the Texas witnesses, because he did not see "any merit" to a claim based on trial counsel's failure to "call an unhelpful witness who refused to testify." Attorney 5 also testified that he reviewed his recommendations regarding "what . . . would be [a] good appeal" with Betancourt and that Betancourt was "okay with it." But Betancourt testified in rebuttal that he "wanted" Attorney 5 to "raise the alibi defense" on appeal.

Order Following Evidentiary Hearing

The district court subsequently issued an order correcting Betancourt's sentences and resentencing him to 10 to 30 years' imprisonment for use of a firearm to commit a felony and to life imprisonment for conspiracy to commit kidnapping. But the district court denied Betancourt's claims as to his alibi defense and "misidentification defense," which it essentially treated as a single claim involving the Texas witnesses.

The district court reasoned that calling the Texas witnesses "presented a dilemma to the defense" because the witnesses could not testify that Betancourt was in Texas on November 15, 2003, and they were unwilling to testify at all. The district court also noted that even if Betancourt had called Attorney 2 to testify that the witnesses had stated otherwise to her, the witnesses were not under oath when speaking to Attorney 2,

and any impeachment testimony would not have been admissible as substantive evidence to prove alibi or misidentification. The district court thus concluded that the decision not to pursue an alibi defense was a reasonable strategic decision and did not amount to ineffective assistance of counsel. Accordingly, the district court found that Betancourt was not prejudiced by appellate counsel's failure to raise the issue.

Betancourt timely appealed, and we moved the matter to our docket.[3]

## ASSIGNMENTS OF ERROR

Betancourt assigns, restated, that the district court erred in denying his layered claims of ineffective assistance of counsel related to his alibi defense and his "misidentification defense." Betancourt also assigns that the district court erred in denying him an evidentiary hearing on an additional 16 layered claims of ineffective assistance of counsel.

## STANDARD OF REVIEW

[1] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact.[4] An appellate court upholds the trial court's findings unless they are clearly erroneous.[5]

[2] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[6] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[7] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

[4] *State v. Ellis*, 311 Neb. 862, 975 N.W.2d 530 (2022).

[5] *Id*.

[6] *Id*.

[7] *Id*.

articulated in *Strickland v. Washington*,[8] an appellate court reviews such legal determinations independently of the lower court's decision.[9]

## ANALYSIS

### No Error as to Alibi and Misidentification Defenses

[3] We begin with Betancourt's argument that the district court erred in denying his layered claims of ineffective assistance of counsel regarding his alibi defense and his "misidentification defense." We have recognized that the alibi defense places a "heavy evidentiary burden" on the defendant.[10] To establish an alibi defense, a defendant must show (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it was impossible to have been at the place where and when the crime was committed.[11] Misidentification, in contrast, is not a defense with specific elements that must be proved by the defendant. Betancourt raises separate assignments of error regarding both alibi and misidentification. However, his arguments on appeal and the evidence in the record before us show that his concerns as to both alibi and misidentification are similar—namely, trial counsel's failure to present evidence from witnesses who, Betancourt claims, could have placed him elsewhere on November 15, 2003, or other dates. As such, our analysis below pertains equally to both defenses.

[4] When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on direct appeal of ineffective assistance of trial counsel (a layered

---

[8] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[9] *Ellis, supra* note 4.

[10] *State v. Newman*, 310 Neb. 463, 474, 966 N.W.2d 860, 870 (2021).

[11] *State v. Newman, supra* note 10.

claim of ineffective assistance of counsel), as is the case here, an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland*.[12] If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.[13]

[5-7] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[14] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[15] To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[16] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[17] A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either.[18]

Under the foregoing framework, Betancourt's claim that his appellate counsel was ineffective ultimately rests on his argument that his trial counsel were ineffective in failing to subpoena, depose, or obtain sworn statements from his former employer, an employee of his former landlord, and his former neighbor, each of whom he claims "could have" corroborated he was elsewhere at the time of the offenses.[19] Betancourt

---

[12] See *State v. Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022).

[13] *Cullen, supra* note 12.

[14] *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024).

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id*.

[19] Brief for appellant at 20.

argues that there was "[n]o reasonable strategic reason . . . to not call these witnesses," because such corroboration was necessary to show an alibi or misidentification.[20] Betancourt argues that absent corroboration, he "ended up with no cogent defense."[21] The State counters that trial counsel made a reasonable strategic decision not to present the witnesses' evidence, because "none of those witnesses could actually provide an alibi for Betancourt" and the Texas witnesses, in particular, were "uncooperative."[22] The State also argues that Betancourt was not prejudiced by trial counsel's failure to present the evidence, because Betancourt's nephew and codefendant otherwise identified him as the perpetrator.

[8] When the evidence in the record before us is considered under the standard of review previously noted, we agree with the State that the district court did not err in finding that trial counsel made a reasonable strategic decision not to subpoena, depose, or obtain sworn statements from the witnesses and, thus, were not ineffective. As we have explained, a reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel.[23] Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable.[24]

The record here shows that the Texas witnesses, in particular, ultimately stated that they could not place Betancourt in Texas at the time of the offenses, and they were unwilling to testify. Attorneys 3 and 4 testified to this effect, and Betancourt himself acknowledged that counsel had informed him prior to trial that the Texas witnesses were unable to place him in Houston on November 15, 2003, and that they

---

[20] *Id*. at 21.

[21] *Id*. at 22.

[22] Brief for appellee at 12.

[23] *Newman, supra* note 10.

[24] *Id*.

resisted testifying. Admittedly, Betancourt also testified that this was because trial counsel "threatened" the witnesses and that the witnesses otherwise were "still willing" to testify on his behalf. However, the district court resolved any conflict in the evidence here by finding the Texas witnesses could not corroborate Betancourt's claim that he was in Houston on November 15 and they were unwilling to testify. Under the standard of review previously noted, we find no clear error in these findings. There was also evidence that trial counsel were concerned that "forc[ing]" the witnesses to testify might make things worse. In short, there was competent evidence in the record supporting the district court's decision.

Betancourt also points to the fact that the Texas witnesses "could have" testified that he lived and worked in Texas before and after the date of the offenses.[25] However, Betancourt never identified any specific dates when he was in Texas according to those witnesses. This lack of detail is significant, given that the testimony at the trial was going to be that Betancourt and the codefendant "left Nebraska and traveled . . . down to Kansas or down to Texas" immediately after the offenses. In fact, Attorney 3 testified that he was concerned that the Texas witnesses could have ended up "corroborating the co-defendant."

[9] Betancourt's claim that the Texas witnesses could have been impeached about their prior inconsistent statements that he was in Houston on November 15, 2003, is similarly without merit. Betancourt takes issue with the district court's suggestion that under *State v. Davis*,[26] he might not have

---

[25] Brief for appellant at 20.

[26] *State v. Davis*, 310 Neb. 865, 878, 969 N.W.2d 861, 870 (2022) (impeachment of party's own witness by means of prior inconsistent statement may not be employed as "'mere subterfuge'" or for "'primary purpose'" of placing before jury substantive evidence which is not otherwise admissible, when party is aware prior to calling witness that witness' testimony will not be consistent with witness' prior statement). See, also, *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015).

been allowed to impeach the witnesses with those statements. Betancourt maintains that the district court misconstrued *Davis* and that impeachment would have been allowed here. We need not resolve this dispute, because even if Betancourt is correct that the Texas witnesses could have been impeached about their prior statements, such evidence would have served only to discredit his own witnesses. This is because when allowed under *Davis* and related cases, prior inconsistent statements are admissible as impeachment evidence, but they are not admissible as substantive evidence unless they are otherwise admissible under the Nebraska Evidence Rules.[27]

The prior inconsistent statements in this case were allegedly made in conversations with Attorney 2, and not under oath. As such, they are hearsay.[28] Betancourt does not argue that the statements are otherwise admissible under the Nebraska Evidence Rules.[29] Thus, they would not have been admissible as substantive evidence that he was in Houston on November 15, 2003. Instead, they would have served only to show that the Texas witnesses—upon whose testimony Betancourt otherwise hoped to rely to show that he was in Texas before and after the date of the offenses—were not credible.[30]

We take a similar view of the failure to present the evidence of Betancourt's former neighbor. Betancourt relies upon an affidavit from the neighbor attached to his petition for postconviction relief, wherein the neighbor states that on the

---

[27] *State v. Ballew*, 291 Neb. 577, 867 N.W.2d 571 (2015).

[28] See *Clark, supra* note 14 (hearsay is statement, other than one made by declarant while testifying at trial or hearing, offered into evidence to prove truth of matter asserted).

[29] See Neb. Rev. Stat. §§ 27-802 to 27-806 (Reissue 2016).

[30] Cf. *State v. Britt*, 310 Neb. 69, 963 N.W.2d 533 (2021) (counsel not ineffective for failing to call witnesses to impeach testimony of defendant's girlfriend where her prior inconsistent statements could not have been used as substantive evidence that she did not pick him up after robbery or that he did not hand her gun, but, rather, would have been limited solely to discrediting her).

night in question, she observed three to five men "getting out of cars" at Betancourt's former residence. The neighbor also stated that the residence had been vacant for at least 3 months and that after Betancourt's family moved away, she never saw him again. On appeal, Betancourt argues that testimony by his former neighbor to this effect at the trial would have supported his claims of alibi and misidentification, apparently by showing he was not one of the men she saw on November 15, 2003. However, the neighbor also stated that she observed the events in the dark from across the street, and she gave no indication that she was able to identify the men as not being Betancourt.

Betancourt's remaining argument, regarding the "striking"[31] similarities between his case and *State v. Lang*,[32] is similarly without merit. The defendant in *Lang* moved to vacate and set aside his judgment and conviction on the ground that his trial counsel was ineffective for failing to interview and subpoena witnesses known to counsel who would have corroborated the defendant's version of events.[33] We agreed that the defendant's counsel "failed to perform a function which a reasonably competent attorney would perform," and, as such, we remanded the cause for a new trial.[34]

Betancourt seemingly construes *Lang* to mean that the failure to subpoena the witnesses, in and of itself, was deficient performance; he argues that insofar as he wanted the witnesses to testify, counsel should have "honor[ed his] requests."[35] However, the specific defect that we noted in counsel's performance in *Lang* was the failure to investigate. Because the counsel in *Lang* did not interview the witnesses, he was unaware they had evidence that contradicted the State's theory

---

[31] Brief for appellant at 20.

[32] *State v. Lang*, 202 Neb. 9, 272 N.W.2d 775 (1978).

[33] *Id*.

[34] *Id*. at 16, 272 N.W.2d at 779.

[35] Brief for appellant at 18.

of the case. Here, in contrast, all of Betancourt's attorneys, except for Attorney 1, were aware of the identity of his proposed witnesses and the testimony he hoped to elicit from them. Betancourt did testify at the evidentiary hearing that Attorney 1 was remiss in investigating because he did "[n]othing" with the information Betancourt gave him about the Texas witnesses. However, Attorney 1 testified that Betancourt "didn't have firm dates or people" and that Attorney 1 attempted to contact people, but ultimately failed.

Because Betancourt's trial counsel made a reasonable strategic decision not to subpoena, depose, or obtain sworn statements from his witnesses, Betancourt was not prejudiced by appellate counsel's failure to raise the issue on direct appeal. As such, Betancourt's argument that the district court erred in denying his layered claims of ineffective assistance of counsel regarding his alibi defense and his "misidentification defense" is without merit.

Remaining Claims Addressed or Precluded

We next turn to Betancourt's argument that the district court erred in denying him an evidentiary hearing on an additional 16 layered claims of ineffective assistance of counsel.

The record on appeal shows that one of those claims, regarding trial counsel's failure to object to Betancourt's sentence of "life imprisonment without parole" for conspiracy to commit kidnapping, was actually heard by the district court. The district court sustained Betancourt's petition on that claim and resentenced him to "life imprisonment."

As to the other 15 claims, we previously found that Betancourt was not entitled to an evidentiary hearing on those claims when we affirmed, in relevant part, the district court's order denying him such a hearing. As a result, the law-of-the-case doctrine precludes reconsideration of the claims here.

[10-12] Unlike the doctrines of claim preclusion and issue preclusion, which involve successive lawsuits, the law-of-the-case doctrine involves successive stages of one continuing

lawsuit.[36] When it applies, the law-of-the-case doctrine operates to preclude reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution.[37] The doctrine promotes judicial efficiency and protects parties' settled expectations by preventing parties from relitigating settled issues within a single action.[38]

We have previously recognized certain exceptions to the law-of-the-case doctrine, where "'considerations of substantial justice suggest a reexamination of the issue is warranted,'" where materially and substantially different facts are presented, or where the applicable law has changed.[39] However, nothing in the record before us suggests that any such exception applies here.

## CONCLUSION

The trial court did not err in denying Betancourt's petition for postconviction relief, because trial counsel's decision not to subpoena, depose, or obtain sworn statements from Betancourt's proposed witnesses was a reasonable strategic decision and, thus, did not constitute ineffective assistance. As such, Betancourt was not prejudiced by appellate counsel's failure to raise the issue on direct appeal. Additionally, Betancourt's other claims of ineffective assistance of counsel either resulted in relief or are precluded under the law-of-the-case doctrine. Accordingly, we affirm the order of the district court.

Affirmed.

Freudenberg, J., not participating.

---

[36] *State v. Boppre*, 315 Neb. 203, 995 N.W.2d 28 (2023).

[37] *Id*.

[38] *Id*.

[39] *Id*. at 233, 995 N.W.2d at 52.