IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GONZALEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JAKE J. GONZALEZ, APPELLANT.

Filed April 15, 2025.   No. A-24-479.

Appeal from the District Court for Jefferson County: DAVID J. A. BARGEN, Judge. Affirmed.

Benjamin H. Murray, of Murray Law, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Jake J. Gonzalez appeals from an order of the district court for Jefferson County, which denied his motion for postconviction relief without an evidentiary hearing. Finding that the district court did not err by denying Gonzalez' postconviction claims without an evidentiary hearing, we affirm.

## BACKGROUND

### CONVICTION AND DIRECT APPEAL

In 2021, Gonzalez was convicted after a jury trial of intentional child abuse resulting in death and terroristic threats. The district court subsequently sentenced him to a total of 70 to 80 years' imprisonment. The facts underlying Gonzalez' convictions were detailed in his direct appeal

to the Nebraska Supreme Court. See *State v. Gonzalez*, 313 Neb. 520, 985 N.W.2d 22 (2023) (*Gonzalez I*). We recount a portion of the facts summarized in the Supreme Court's opinion here:

> In 2020, B.S. was the single mother of two children, M.W. and H.S. B.S. lived with H.S., who was born in 2018. M.W. lived with her father during the week and stayed with B.S. on weekends. In August 2020, B.S. began a casual sexual relationship with . . . Gonzalez. In October, B.S. discovered she was pregnant with Gonzalez' child. In January 2021, Gonzalez began living with B.S. and H.S. at her apartment in Jefferson County.
>
> B.S. testified that Gonzalez was controlling and physically abusive. B.S. developed a safety plan with a friend where she would say "sushi" and the friend would contact law enforcement. She had a similar plan with a worker at a child welfare nonprofit organization, where she would say she "was having a fantastic day or everything was going fantastic" and the worker would get help. B.S. testified that Gonzalez was often irritated with H.S.' crying, would yell at him, and on occasion pushed and threatened him.
>
> On February 26, 2021, while Gonzalez was at work, B.S. and a friend went to the sheriff's office to seek help getting B.S. out of her relationship with Gonzalez. After Gonzalez got home from work, he, B.S. and M.W. picked up H.S. from daycare. B.S. took Gonzalez and H.S. to the apartment because Gonzalez offered to change H.S.' diaper and look after him while B.S. and M.W. went to buy groceries.
>
> B.S. testified that when they returned, she found H.S. lying in bed, undressed down to his diaper and with visible bruising. B.S. tried to move toward H.S., but Gonzalez grabbed her arm and told her not to touch H.S. Gonzalez picked up H.S. by the arm and tried to stand him up, but H.S. could not stand on his own. Gonzalez told B.S. to calm down or else "the same thing would happen to [M.W.]" When B.S. attempted to move toward H.S. again, Gonzalez pushed her back and then dragged H.S. into the bedroom closet and slammed him against the closet wall.
>
> B.S. suggested that she go get a pizza she had left in the car, hoping to seek help outside, but Gonzalez insisted on going with her. While they were briefly separated outside the apartment, B.S. was able to call her mother and tell her to give the safety word to her friend with whom she had established the safety plan. When they returned to the apartment, B.S. tried to check on H.S. in the bedroom closet, but Gonzalez told her to leave him alone. B.S. then convinced Gonzalez to allow her to make her regular call to the worker at the nonprofit organization, and she used her safety word.
>
> The sheriff's office received a call for dispatch to the apartment. A deputy sheriff was one of the first responders. He called an ambulance and followed B.S. to the bedroom closet where he observed H.S. to be "very distressed," pale, minimally responsive, and unable to pick himself off the floor, as well as with bruising all over his body. The doctor who attempted to treat H.S. at the hospital testified that H.S.' liver was "basically split almost in half," his blood was not circulating, and it was too late for surgery because he was "brain dead." An autopsy determined that the cause of H.S.' death was from lethal damage to the liver from blunt force trauma to the abdomen.

*Gonzalez I*, 313 Neb. at 523-525, 985 N.W.2d at 29.

In addition to the evidence recited by the Supreme Court in *Gonzalez I*, there was other evidence presented by the State during the trial which demonstrated that H.S.' injuries had to have occurred after he left daycare on February 26, 2021. Such evidence included video of H.S. at daycare throughout that day. He was shown playing normally with the other children and interacting with the daycare employees. At one point during the video, H.S. lifts up his shirt to show the other children his stomach. There are no visible bruises or injuries on his torso. In contrast, photographs of H.S. taken at the hospital on the night of February 26 and during his autopsy show significant bruising and injuries to his torso. We also note that the evidence at trial demonstrated that when Gonzalez recognized that a deputy sheriff had arrived at the apartment, he fled from the scene.

After the jury trial, Gonzalez was found guilty as indicated above. The court sentenced him to concurrent terms of imprisonment of 70 to 80 years for child abuse resulting in death and 3 years to 3 years for terroristic threats.

On direct appeal to the Supreme Court, Gonzalez claimed that the district court erred by failing to instruct the jury on manslaughter as a lesser included offense and by denying his motion to change venue. *Gonzalez I*. The Supreme Court found no error by the district court and affirmed Gonzalez' convictions and sentences. *Id*. Notably, Gonzalez was represented in his direct appeal by the same counsel who represented him at trial.

POSTCONVICTION PROCEEDINGS

On February 28, 2024, Gonzalez, now represented by new counsel, filed a motion for postconviction relief. In the motion, he alleged seven allegations of ineffective assistance of trial counsel, including that trial counsel failed to (1) adequately communicate with Gonzalez about the case prior to trial; (2) investigate and call witnesses in Gonzalez' defense; (3) prepare for trial; (4) renew the motion to change venue; (5) object to gruesome photographs of H.S.' body which were admitted during the trial; (6) move for a mistrial after jurors saw Gonzalez wearing restraints; and (7) offer material evidence.

On May 31, 2024, the district court entered an order denying Gonzalez' motion for postconviction relief without an evidentiary hearing. In addressing Gonzalez' claims, the court determined that they were conclusory, without supporting facts; were insufficiently pled; were procedurally barred; or that Gonzalez could not show he was prejudiced by trial counsel's actions. Gonzalez subsequently perfected his appeal to this court.

ASSIGNMENTS OF ERROR

On appeal, Gonzalez generally asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. He specifically argues that his claims of ineffective assistance of trial counsel warranted an evidentiary hearing and, ultimately, postconviction relief. Such assertions of ineffective assistance of counsel include that counsel failed to adequately communicate with Gonzalez; failed to investigate or call witnesses; was unprepared for trial; failed to renew the motion for a change in venue; failed to object to the introduction of gruesome photographs at trial; failed to move for a mistrial after jurors observed Gonzalez wearing restraints; and failed to introduce material evidence.

STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025).

ANALYSIS

On appeal, Gonzalez asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. In his motion, Gonzalez set forth seven separate claims, each alleging ineffective assistance of trial counsel. On appeal to this court, Gonzalez reasserts his arguments with respect to each of those claims. Before addressing Gonzalez' specific arguments, we first set forth the general principles of law applicable to our analysis.

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Davis*, 317 Neb. 59, 8 N.W.3d 247 (2024). The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *State v. Goynes, supra*. An evidentiary hearing is required on a motion for postconviction relief unless: (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The likelihood of a different result must be substantial, not just conceivable. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). The two prongs of the test under *Strickland v. Washington, supra*, may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023).

We note that because Gonzalez was represented by the same counsel during his direct appeal as represented him at trial, this postconviction action is his first opportunity to assert claims of ineffective assistance of trial counsel.

FAILURE TO COMMUNICATE WITH GONZALEZ

Gonzalez asserts both in his motion for postconviction relief and in this appeal that his trial counsel provided ineffective assistance in failing to communicate with him about the criminal

proceedings. Specifically, Gonzalez argues that trial counsel "only met with [him] sporadically during the months leading up to trial and did not include [him] in any substantive discussions of trial strategy or plea negotiations." Brief for appellant at 14. He further argues that trial counsel did not meet with him during the trial to discuss what was occurring. Gonzalez asserts that such deficient performance by his trial counsel prejudiced him by denying him the right to participate in his own defense and that but for such deficient performance, the result of the proceedings would have been different.

In the district court's order denying Gonzalez an evidentiary hearing, the court found that Gonzalez failed to demonstrate he was prejudiced by trial counsel's communication, or lack thereof. The court indicated that Gonzalez' assertion that the result of the proceedings would have been different had trial counsel communicated with him more was conclusory and "does not show the alleged deficient performance actually prejudiced his defense."

Upon our review, we agree with the district court that Gonzalez failed to demonstrate any prejudice from his alleged lack of communication with trial counsel. As a part of his claim, Gonzalez does not allege what additional information he would have discussed with counsel had there been more opportunities for communication and how such information would have changed the outcome of the jury trial in any way. Moreover, we find that Gonzalez' general allegation that trial counsel failed to adequately communicate with him is not a sufficient allegation of deficient performance. The Supreme Court found that similar allegations that the defendant's trial counsel "'did not engage in meaningful conversations about the State's evidence and what evidence [the defendant] had to rebut the charges he faced'" were not sufficient allegations of deficient performance. *State v. Mora*, 298 Neb. 185, 200, 903 N.W.2d 244, 257 (2017). Given that Gonzalez failed to sufficiently allege either deficient performance or prejudice, this claim of ineffective assistance of trial counsel must fail.

FAILURE TO INVESTIGATE AND CALL WITNESSES

Gonzalez next asserts both in his motion for postconviction relief and in this appeal that his trial counsel provided ineffective assistance in failing to investigate the theory that B.S. had a history of abusing H.S. and "was likely the actual perpetrator of the crimes for which Gonzalez was convicted." As a part of this claim, Gonzalez argues that his trial counsel should have called his mother and his brother as witnesses, because they had witnessed acts of abuse perpetrated by B.S. upon H.S. Gonzalez argues that trial counsel's failure to investigate this theory and call the witnesses to corroborate it denied him an adequate defense.

In the district court's order denying Gonzalez an evidentiary hearing, it found that this assertion lacked specificity because Gonzalez failed to assert that any further investigation or witness testimony "would have actually implicated [B.S.] in the incidents that led to [H.S.'] death, or otherwise refuted the other evidence in the case against [Gonzalez]." We agree with the district court.

The Supreme Court has previously held that in a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing. See *State v. Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022). Absent specific allegations, a motion for

postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists. *Id*.

Here, Gonzalez asserts that his trial counsel should have further investigated the possibility that B.S. was the actual perpetrator of the child abuse which resulted in H.S.' death. In connection with this assertion, Gonzalez does not make any specific allegations of actual evidence or testimony that would have implicated B.S. in H.S.' death. Instead, he suggests that had trial counsel called Gonzalez' mother and brother to testify, they would have testified to other instances of abuse perpetrated on H.S. by B.S. However, even if the additional witnesses provided such testimony, it would not have rebutted the overwhelming evidence presented at trial which demonstrated that Gonzalez was the only person who could have caused the fatal wounds to H.S. Such evidence included that H.S.' injuries had to have occurred after he left daycare on February 26, 2021; that Gonzalez was alone with H.S. immediately after daycare and just prior to him being fatally injured; that Gonzalez ran from law enforcement after B.S. reported H.S.' injuries; and Gonzalez' history of becoming angry with H.S. Gonzalez does not allege that his mother or his brother could link B.S. to the injuries resulting in H.S.' death, nor could they provide any other relevant information about the incident of child abuse which led to the H.S.' death.

Ultimately, we conclude that Gonzalez' allegations that trial counsel failed to investigate the theory that B.S. was the actual perpetrator and to call witnesses to support that theory were not supported by sufficient facts. The allegations were simply conclusory in nature. The district court did not err when it refused an evidentiary hearing on this claim.

### FAILURE TO PREPARE FOR TRIAL

Gonzalez asserts that his trial counsel was also ineffective because he was unprepared for trial. Specifically, Gonzalez claims that trial counsel did not interview or prepare witnesses for trial, could not recite the names of the witnesses he planned on calling to testify during voir dire, and "seemed confused and disorganized at times" during the trial. Gonzalez argues that but for trial counsel's actions, the result of the jury trial would have been different. The district court denied Gonzalez an evidentiary hearing on this issue after finding that Gonzalez failed to allege sufficient information to demonstrate any prejudice.

Upon our review of the record, we find that Gonzalez' assertion lacks sufficient factual support and does not demonstrate with specificity any prejudice suffered by Gonzalez. First, Gonzalez does not allege which witnesses trial counsel failed to interview or prepare. Trial counsel did call one witness to testify in Gonzalez' defense. Gonzalez does not point to any portion of that witness' testimony which demonstrated a lack of preparedness. Moreover, Gonzalez does not point out any instances of insufficient cross-examination of the State's witnesses conducted by trial counsel.

As to Gonzalez' assertion that trial counsel could not recite the names of his witnesses during voir dire, the record reveals that trial counsel was not sure exactly which witnesses he would be calling to testify, as it would depend on how the State's case went forward. Counsel indicated his belief that "a lot of the cross-examination of the State's witnesses is going to take care of the evidence." Furthermore, Gonzalez did not provide any specific instances during trial where counsel was confused or disorganized.

In addition to Gonzalez' failure to provide any factual support for his assertions of deficient performance by trial counsel, he also fails to explain how he was prejudiced by trial counsel's actions. Gonzalez does not assert how any portion of the trial would have been different had counsel been more "prepared." He also does not explain how any additional preparedness on counsel's behalf would have assisted in refuting the overwhelming evidence against him.

Because Gonzalez did not sufficiently plead how his trial counsel's performance was deficient or how he was prejudiced by any such performance, this claim of ineffective assistance of trial counsel must fail.

### FAILURE TO RENEW MOTION FOR CHANGE OF VENUE

During voir dire, Gonzalez' counsel made a motion for a change of venue: "I am going to make a Motion to Change Venue, and I would like a short hearing on that. I am prepared to do that now. I am afraid that if I pass the jury for cause I have given up the issue of whether we can pick a fair jury here." In response to counsel's oral motion to change venue, the district court immediately held a hearing to determine whether venue was proper in Jefferson County.

At the hearing, Gonzalez' counsel argued that during the first portion of voir dire, at least "20 jurors [] were excused for the cause of bias and forming opinions and expressing opinions." In addition, at least five other potential jurors raised an issue with pretrial publicity, but were not excused from the panel. Gonzalez' counsel asserted that the "whirlwind of media and gossip" surrounding the case prevented Gonzalez from receiving a fair trial in Jefferson County. To the contrary, the State argued that there were enough potential jurors left on the panel who explicitly indicated that they could be fair and impartial in deciding Gonzalez' guilt or innocence. The State did not believe that the media coverage of the case had been "uncommon."

The district court overruled Gonzalez' motion to change venue. The court explained:

Well, I would note that we're in the middle of voir dire, close to the end, I think, from what counsel have said and what we have heard; that the test of whether you can obtain a fair jury is the voir dire process. We have not yet completed that. We now have 40 jurors who have said up to this point I can be fair and impartial, that we have an excess of four right now from which we will pick one to be an alternate.

And I did tell the sheriff's department at noon, because we had a large number of people conflict out, for lack of a better term, that they should be prepared to bring in other jurors under the talesman procedure. . . . So we are a long way from being done. The Motion to Change Venue is overruled.

Voir dire continued at the close of the hearing on the motion to change venue. The parties chose 12 jurors and 1 alternate to hear the proceedings.

In Gonzalez' direct appeal, he challenged the district court's decision to overrule his motion to change venue. *Gonzalez I*. The Supreme Court found no abuse of discretion in the district court's decision: "The district court did not abuse its discretion in denying Gonzalez' motion to change venue because he failed to show pervasive misleading publicity and there were enough jurors who said they could consider the evidence fairly and impartially." *Id*. at 526, 985 N.W.2d at 31.

In his motion for postconviction relief and in this appeal, Gonzalez now claims that his trial counsel provided ineffective assistance by failing to renew the motion to change venue after voir dire was completed. Upon our review, we conclude that trial counsel did not provide deficient performance by failing to renew the motion.

When trial counsel made the motion to change venue during voir dire, the district court held a hearing on the motion and overruled the motion on its merits, finding that there were sufficient potential jurors left on the panel to make up a fair and impartial jury. And, a jury was in fact seated at the conclusion of voir dire. On direct appeal, the Supreme Court affirmed the decision of the district court. Given that the district court overruled trial counsel's motion on the merits after a hearing and given that the Supreme Court affirmed this decision, any effort by trial counsel to renew the motion to change venue after voir dire would have been futile. It is not ineffective for trial counsel to fail to make a meritless claim. See *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). Because any potential renewal of the motion to change venue would clearly have been overruled, trial counsel's failure to renew the motion was not ineffective assistance of counsel. This assignment of error is without merit.

FAILURE TO OBJECT TO GRUESOME PHOTOGRAPHS

At trial, the State offered into evidence 4 photographs of H.S. which were taken at the hospital and approximately 12 photographs of him which were taken during an autopsy. The photographs evidenced the numerous injuries suffered by H.S. in the hours prior to his death and were utilized during the pathologist's testimony to explain H.S.' cause of death.

In his postconviction motion and in this appeal, Gonzalez asserts that trial counsel provided ineffective assistance in failing to object to the admission of these photographs into evidence. He explains, "The prejudicial effects of said photographs outweighed their probative value, as they are particularly gruesome, and include the dissection of a two-year old during autopsy." Brief for appellant at 16. Upon our review, we conclude that Gonzalez cannot demonstrate that counsel's failure to object to the photographs constituted deficient performance, because any such objection would have been overruled.

The Supreme Court has previously observed that "gruesome crimes produce gruesome photographs." *State v. Boswell*, 316 Neb. 542, 5 N.W.3d 747 (2024). However, even if a photograph is "gruesome," when the State lays proper foundation, photographs that illustrate or make clear a controverted issue in a homicide case are admissible. *Id*. The gruesome nature of photographs alone will not keep them from the trier of fact, so long as the probative value is not outweighed by the prejudicial effect. *Id*.

We agree that the photographs of H.S. in the hospital and during the autopsy are relatively gruesome, in that they depict a very young child with a number of very serious injuries that were clearly the result of abuse. However, such photographs were necessary to demonstrate the nature and extent of H.S.' injuries and to explain how those injuries led to his death. The pathologist who performed the autopsy of H.S. explained that the photographs from the autopsy, in particular, were "taken to demonstrate the trauma, the injuries that occurred to the body of [H.S.]. They can be fairly graphic, but they're necessary in order to demonstrate the extent of the injuries that occurred to this individual." Given the strong probative nature of this photographic evidence, we cannot say that the probative value was substantially outweighed by the danger of unfair prejudice. This is

particularly true where Gonzalez has failed to allege exactly what about the photographs was so prejudicial.

Ultimately, we conclude that even if counsel had objected to the photographs as being too gruesome or too prejudicial, such objection would have been properly overruled by the district court. And, as we stated above, trial counsel does not provide deficient performance by failing to raise a meritless claim. See *State v. Jaeger, supra*. Because Gonzalez cannot demonstrate that trial counsel was ineffective in failing to object to the photographs, this claim must fail.

## FAILURE TO MOVE FOR MISTRIAL

Gonzalez asserts that his trial counsel provided ineffective assistance in failing to move for a mistrial after jurors observed him in restraints, in violation of a previously entered court order. Gonzalez indicates that "[o]n at least one occasion, on the morning of trial, [Gonzalez] was observed by the jurors in full restraints in violation of the Court's order." Gonzalez contends that trial counsel was aware of the incident, but did not move for a mistrial. Gonzalez does not provide any further detail regarding the incident, including the exact date of the incident, where the incident occurred, how many jurors may have seen him in the restraints, how long any jurors observed him in restraints, or what type of restraints he was then wearing.

Our thorough review of the record also did not reveal any details of such an incident. However, we do note that after the first day of trial, the parties had a meeting with the district court in chambers. At that time, trial counsel indicated that he was withdrawing his previous motion for a mistrial after discussing the matter with Gonzalez. It is not apparent from our record whether this motion for a mistrial was a response to the jurors observing Gonzalez in restraints or was based on a wholly unrelated issue.

Ultimately, we conclude that Gonzalez failed to provide sufficient factual support for this claim of ineffective assistance of trial counsel. Specific facts regarding this type of claim are necessary to determine whether counsel's performance in failing to move for a mistrial was deficient. See, e.g., *State v. Floyd*, 272 Neb. 898, 725 N.W.2d 817 (2007) (finding no prejudice where defendant appeared before jury in shackles at time when jury's verdicts were rendered and jury was polled); *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003) (finding no prejudice when jury observed defendant in shackles during jury selection). As we stated above, an evidentiary hearing is not warranted when the motion for postconviction relief does not contain sufficient factual allegations concerning a denial or violation of constitutional rights affecting the judgment against the movant. Here, Gonzalez did not provide us with sufficient information to determine whether any violation of his rights actually occurred.

## FAILURE TO INTRODUCE MATERIAL EVIDENCE

Gonzalez' final claim of ineffective assistance of trial counsel alleges that counsel failed to introduce photographs of Gonzalez' body taken immediately after his arrest. According to Gonzalez, such photographs would have shown that he had no injuries on his hands and, thus, could not have been the person who assaulted H.S. Upon our review, we conclude that Gonzalez' claim must fail because he cannot show that he was prejudiced by trial counsel's failure to offer such photographs into evidence.

The evidence presented at trial revealed that H.S. died of blunt force trauma to his abdomen. There was no specific testimony to indicate that the person who assaulted H.S. used their hands to inflict the injuries or to suggest that the assailant would have noticeable injuries to their hands. As such, had trial counsel offered the photographs of Gonzalez' hands which showed no injuries, this evidence would not have altered the ultimate outcome of the trial. As we have stated above, the evidence against Gonzalez was overwhelming. He was alone with H.S. at the time he was injured, he did not seek any medical assistance for H.S., and Gonzalez fled from law enforcement officers when they arrived at the apartment. Any photographs of Gonzalez' body taken around the time of his arrest would not have refuted this evidence. We find no error in the district court's decision to deny Gonzalez an evidentiary hearing on this claim.

## CONCLUSION

For the reasons set forth herein, we affirm the decision of the district court to deny Gonzalez' motion for postconviction relief without an evidentiary hearing.

AFFIRMED.