Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/25/2022 09:08 AM CST

State of Nebraska, appellee, v.
Terrell E. Newman, appellant.

___ N.W.2d ___

Filed December 3, 2021.    No. S-20-680.

1. **Postconviction: Evidence: Witnesses: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous.

2. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

3. **Postconviction: Constitutional Law.** Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.

4. **Postconviction: Sentences: Appeal and Error.** The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence.

5. **Postconviction: Constitutional Law: Proof.** A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

6. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

7. ____: ____. To show that counsel's performance was deficient under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

8. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

9. **Effectiveness of Counsel: Proof.** A court may examine the two prongs of the ineffective assistance of counsel test, deficient performance and prejudice, in any order and need not examine both prongs if a defendant fails to demonstrate either.

10. **Attorneys at Law: Effectiveness of Counsel.** A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

11. **Trial: Effectiveness of Counsel: Appeal and Error.** A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable.

12. **Attorneys at Law: Effectiveness of Counsel.** An attorney must at a minimum interview potential witnesses and make an independent investigation of the facts and circumstances in the case.

13. **Criminal Law: Evidence: Proof.** To establish an alibi defense, a defendant must show (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it was impossible to have been at the place where and when the crime was committed.

14. **Postconviction: Evidence: Witnesses.** In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of

fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony.

15. **Evidence: Appeal and Error.** Where competent evidence supports the district court's findings, the appellate court will not substitute its factual findings for those of the district court.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed.

Jason E. Troia and Stuart J. Dornan, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Steinke and Otte, District Judges.

Funke, J.

Terrell E. Newman appeals from the denial of postconviction relief following an evidentiary hearing. Newman contends that his trial counsel was ineffective in failing to investigate and present an alibi defense and that the trial court should have allowed live testimony at the evidentiary hearing. We disagree and therefore affirm the order of the district court.

## BACKGROUND

In 2013, in a joint trial, a jury convicted codefendants Newman and Derrick U. Stricklin on two counts of first degree murder, three counts of use of a deadly weapon to commit a felony, attempted intentional manslaughter, and possession of a deadly weapon by a prohibited person. The district court for Douglas County sentenced both men to life imprisonment for each murder conviction; 15 to 25 years' imprisonment for each use of a deadly weapon to commit a felony conviction; 20 months' to 5 years' imprisonment for the attempted manslaughter conviction; and 15 to 25 years' imprisonment for the possession of a deadly weapon conviction. All sentences

were to run consecutively. This court affirmed Newman's convictions and sentences on direct appeal.[1]

Newman timely moved for postconviction relief, which the district court denied without conducting an evidentiary hearing. Newman appealed. This court affirmed in part, and in part reversed and remanded for an evidentiary hearing on the sole issue of whether Newman's trial counsel was ineffective for failing to investigate and present an alibi defense.[2]

Prior to the evidentiary hearing, Newman filed a motion for live testimony with the district court, which was denied. The district court then held the evidentiary hearing and, based upon deposition testimony, the trial record, and an affidavit, found no merit to Newman's ineffective assistance of counsel claim. Newman appealed directly to this court.[3]

The facts adduced at trial are fully set forth in our opinion affirming Stricklin's convictions and sentences.[4] Summarized, on December 2, 2012, Carlos Morales and Bernardo Noriega were shot and killed in a drug transaction at an automobile body shop in Omaha, Nebraska. The State alleged that Newman and Stricklin committed the crimes together. Newman's cell phone records showed that he was in communication with Morales and Stricklin on the day of the shootings and that Newman's cell phone was in the area of the murder scene during the relevant timeframe.[5]

The State's primary witness at trial, Jose Herrera-Gutierrez, claimed he was present during the shootings. Based upon information provided by Herrera-Gutierrez, officers compiled photographic lineups containing photographs of Newman and Stricklin. Herrera-Gutierrez identified Newman and Stricklin as the shooters; he testified that he recognized both men

[1] *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015).

[2] *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

[3] Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2020).

[4] *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

[5] *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).

from three or four prior visits to the body shop, although he had never learned their names.

Herrera-Gutierrez testified that following a drug transaction, he witnessed Newman and Stricklin draw firearms.[6] According to Herrera-Gutierrez, Newman instructed Morales to tell Herrera-Gutierrez and Noriega to lie down. Newman tied Herrera-Gutierrez' wrists. Herrera-Gutierrez stated that plastic was wrapped around his face and that he could breathe but was unable to see. He claimed that he heard the two or three gunshots that killed Morales and Noriega, that someone untied his wrists and took the plastic off his head, and that Newman and Stricklin left the scene without shooting him.

Despite testimony from various witnesses regarding the timeline of events, the evidence did not establish a precise time for the shootings. Morales' fiance discovered the bodies at 2:15 p.m. The police broadcast about the shootings went out at 2:34 p.m.

The State's theory was that Newman and Stricklin committed the crimes together, at approximately 12:30 p.m. Newman's cell phone records showed multiple contacts with Stricklin on December 2, 2012, right before and after the relevant period. The State adduced evidence showing that Newman received six calls from 11:42 a.m. to 12:36 p.m. and that Newman's phone used a cell tower located in the immediate vicinity of the body shop.[7]

After this court affirmed Newman's convictions and sentences, Newman moved for postconviction relief, alleging four witnesses would have established an alibi defense had trial counsel interviewed the witnesses himself rather than his investigator. Newman alleged that, if called, Kevin Riley and Janet Mariscal would have testified that at or near the time of the shootings Newman was either at a restaurant he owned or on a supply run to a grocery store. Newman alleged two

---

[6] *Stricklin, supra* note 4.

[7] *Id.*

unnamed employees of the grocery store would have confirmed his presence at the store at or near the time of the shootings. In denying Newman's motion, the district court found that Newman's timeframe allegations were vague and that overwhelming evidence established Newman's guilt.

On appeal, this court concluded that Newman's alleged alibi defense merited an evidentiary hearing. In considering whether there was overwhelming evidence of Newman's guilt, we found that we could not "overlook the fact that the alibi evidence Newman alleges his attorney should have investigated could, if proved, have contradicted the eyewitness identification" and concluded that "depending on the evidence actually presented and found credible, there may be a reasonable probability that if such evidence had been presented at trial, the result of the proceeding could have been different."[8]

Upon remand, at the evidentiary hearing, the district court received deposition testimony from Newman, Newman's trial counsel, Riley, Mariscal, Jessica Rosa, and Frances Mullen.

Newman testified that he owned a restaurant and that he and his fiance, Mariscal, arrived there on December 2, 2012, at 9 or 9:30 a.m. Newman stated he was at the restaurant all day, except for a supply run to the grocery store at 12:20 or 12:30 p.m. Newman stated he purchased wood chips, lighter fluid, and bread. He stated that when he paid for the items, he had a conversation with his cashier, Mullen, about his restaurant. He stated he separately purchased apples and perhaps a sandwich from the customer service line. Newman estimated his entire supply run lasted 20 or 25 minutes, placing him back at the restaurant by approximately 1 p.m. Newman stated that he remained at the restaurant until 5:30 or 6 p.m. and that he provided this information to his counsel shortly after counsel was appointed.

Mariscal testified she was in a dating relationship with Newman. She remembered December 2, 2012, because it

---

[8] *Newman, supra* note 2, 300 Neb. at 781, 916 N.W.2d at 406.

was the day after her daughter's birthday. Mariscal remembered arriving at the restaurant with her daughter and Newman at around 10 or 10:30 a.m. She recalled that Newman went on a supply run around 11 or 11:30 a.m. and that he returned with bread and possibly lighter fluid. She stated that she was not always with Newman while at the restaurant and that he would use the grill located outside of the restaurant.

Riley, who worked at the restaurant, testified he and Newman arrived there at 7 a.m. to begin smoking turkeys. Riley stated Newman was at the restaurant all day, except for about 15 minutes around 10 or 10:30 a.m., when Newman went to the grocery store to get feather bones and charcoal.

In their depositions, Rosa and Mullen confirmed that they worked at the grocery store, but could not confirm whether Newman shopped there on December 2, 2012.

Newman's trial counsel testified in his deposition that on January 22, 2013, he was appointed to represent Newman. Counsel acknowledged that Newman made him aware of his alibi defense early on and that Riley and Mariscal could confirm he was either at the restaurant or at the grocery store.

In preparing a defense, on April 18, 2013, counsel hired a private investigator to investigate Newman's alibi defense, as well as Herrera-Gutierrez' version of events. The investigator was a retired Omaha police officer with 20 years' experience, including working as an investigator in the homicide unit. In forming Newman's defense strategy, counsel planned to rely on the experience of his investigator. Counsel stated that his investigator's experience working in the homicide unit would aid him in determining whether Herrera-Gutierrez' description of the shootings was credible.

Counsel attempted to obtain receipts from either the grocery store or Newman's restaurant, but Newman did not provide any. The investigator contacted the grocery store manager and learned that sales records were kept for only 10 days and that surveillance video was kept for only 40 days.

The investigator interviewed Riley and Mariscal. He assessed Mariscal's account as rehearsed and found Riley had only general knowledge of the restaurant's operations, but no direct knowledge of December 2, 2012, the date of the shootings. Counsel did not personally meet with Newman's alibi witnesses. Based on the investigator's assessment, counsel determined that as a matter of strategy, Newman's best defense was to refute the testimony of Herrera-Gutierrez on cross-examination. Based on counsel's experience, he concluded that Newman's cell phone records undermined the credibility of his alibi defense and that presenting a weak alibi defense to the jury could harm Newman's case and cause the jury to believe he was guilty.

After the evidentiary hearing, the court issued a written order dismissing Newman's motion, finding no merit to his ineffective assistance of counsel claim. The court found Newman failed to establish his counsel's performance was deficient and failed to establish he suffered any prejudice. Based on the deposition testimony of counsel, and the investigator's affidavit, the court found counsel had reasonably investigated the alibi defense. The court found there was no way for counsel to obtain the surveillance video from the grocery store, because it had already been deleted by the time Newman was arrested and counsel was appointed. The court found merit to counsel's testimony that he viewed the alibi defense to be weak and harmful to Newman's case.

The court found Newman's evidence in support of his motion lacked credibility. The court found gaps and conflicts in the timeline testimony of Riley and Mariscal. The court noted that contrary to Newman's allegations, Rosa and Mullen were unable to corroborate his presence at the grocery store. The court considered the strength of Newman's alibi defense in light of the other evidence of his guilt, such as the eyewitness identification and cell phone records, and concluded "there is not a reasonable probability that the outcome of the trial would have been different if trial counsel had called Mariscal, Riley, Mullen, and Rosa to present an alibi defense."

## ASSIGNMENTS OF ERROR

Newman assigns that the district court erred in (1) denying postconviction relief and (2) denying live witness testimony at the evidentiary hearing.

## STANDARD OF REVIEW

[1] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous.[9]

[2] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[10] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[11] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[12] an appellate court reviews such legal determinations independently of the lower court's decision.[13]

## ANALYSIS

Newman contends his trial counsel's performance was deficient when he failed to investigate and present an alibi defense. Newman argues his trial counsel delegated assessment of his alibi defense to a private investigator and that counsel's decision to not pursue the alibi defense based on the investigator's assessments was not competent and resulted in Newman's conviction at trial.

[3-5] Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional

---

[9] *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019).

[10] See *id*.

[11] *Id*.

[12] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[13] *Beehn, supra* note 9.

violations that render the judgment void or voidable.[14] The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence.[15] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.[16]

[6-9] To prevail on a claim of ineffective assistance of counsel under *Strickland*,[17] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[18] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[19] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[20] A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[21] "The likelihood of a different result must be substantial, not

---

[14] *Id.*

[15] *Id.*

[16] *Newman, supra* note 2.

[17] *Strickland, supra* note 12.

[18] *Newman, supra* note 2.

[19] *Id.*

[20] *Id.*

[21] *Id.*

just conceivable."[22] A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either.[23]

### Witness Interviews

[10,11] A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.[24] A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel.[25] Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable.[26]

The decision to interview witnesses must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case.[27] Counsel need not interview every possible witness to have performed proficiently.[28] In every case, trial lawyers could have done something more or something different.[29] The issue is only what is constitutionally compelled.[30]

[12] An attorney must at a minimum interview potential witnesses and make an independent investigation of the

---

[22] *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

[23] See *Strickland, supra* note 12.

[24] *Newman, supra* note 2.

[25] *Id.*

[26] *Id.* See *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020).

[27] See, *Janosky v. St. Amand*, 594 F.3d 39 (1st Cir. 2010); *Lema v. U.S.*, 987 F.2d 48 (1st Cir. 1993); *U.S. v. Caramadre*, 957 F. Supp. 2d 160 (D.R.I. 2013).

[28] *Caramadre, supra* note 27.

[29] *Chandler v. U.S.*, 218 F.3d 1305 (11th Cir. 2000).

[30] *Burger v. Kemp*, 483 U.S. 776, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987).

facts and circumstances in the case.[31] The results of certain interviews or investigation may indicate that further pursuit likely will be a waste of time.[32] "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[33] Counsel's obligation is to conduct a reasonable inquiry into all plausible defenses.[34]

In the instant matter, Newman's trial counsel relied on an experienced investigator to interview Riley and Mariscal. Those interviews did not generate information substantially different than the witness depositions offered at the evidentiary hearing. Additionally, the investigator's conclusion that Riley's testimony and Mariscal's testimony was not sufficiently credible to support an alibi defense is consistent with the district court's conclusion on the same issue. Newman's trial counsel showed reasonable professional judgment in hiring an investigator to evaluate the alibi and in relying on that investigator's determination that Newman's alibi could have been refuted and harmful to his defense. As such, we conclude that the district court was correct in determining that trial counsel's performance was not deficient for not personally interviewing Riley and Mariscal.

## PRESENTATION OF ALIBI DEFENSE

[13] Nebraska precedent indicates that a defendant asserting an alibi defense bears a heavy evidentiary burden. To establish an alibi defense, a defendant must show (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it

---

[31] See, *Bryant v. Scott*, 28 F.3d 1411 (5th Cir. 1994); *U.S. v. Gavin*, 77 F. Supp. 3d 525 (S.D. Miss. 2014).

[32] *Id*.

[33] *Strickland, supra* note 12, 466 U.S. at 690-91.

[34] See *Strickland, supra* note 12.

was impossible to have been at the place where and when the crime was committed.[35]

This court instructed the district court to, on remand, conduct an evidentiary hearing and evaluate the merits of Newman's postconviction claim "depending on the evidence actually presented and found credible." After holding that evidentiary hearing, the district court determined that the evidence presented by Newman lacked credibility and dismissed his claim. The district court reviewed the witness testimony regarding the timeline of events, and it concluded that "Newman has failed to credibly provide the evidence he outlined in his motion." The court found that neither Rosa nor Mullen was able to confirm that Newman was at the grocery store on December 2, 2012. The court also found that Riley and Mariscal did not provide "clear and consistent accounts to provide a credible alibi defense." We agree.

[14,15] In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony.[36] Where competent evidence supports the district court's findings, the appellate court will not substitute its factual findings for those of the district court.[37]

Based upon the evidentiary record, we are persuaded the district court did not err in finding counsel's decision not to call the alibi witnesses to have been a strategic choice made after investigation, and thus, it did not amount to ineffective

---

[35] NJI2d Crim. 8.1, comment, citing *State v. Moreno*, 228 Neb. 210, 422 N.W.2d 56 (1988); *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987); *State v. Sutton*, 220 Neb. 128, 368 N.W.2d 492 (1985); *Mays v. State*, 72 Neb. 723, 101 N.W. 979 (1904); *Peyton v. State*, 54 Neb. 188, 74 N.W. 597 (1898). See, *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987); *State v. Veach*, 16 Neb. App. 50, 740 N.W.2d 817 (2007).

[36] *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021).

[37] *Id*.

assistance.[38] Newman's own alibi evidence indicates that it was possible for the jury to find that he had committed the murder on December 2, 2012, when he was not present at the restaurant. The State claimed that Newman and Stricklin committed the shootings at approximately 12:30 p.m. Newman claimed to be at the grocery store at that time, but Newman did not support his claim with any evidence. Mariscal recalled that Newman went to the store at 11 or 11:30 a.m., whereas Riley stated that Newman went to the store at 10 or 10:30 a.m. Newman's claim was not supported by any receipts or any testimony of store employees. Additionally, Newman's phone records and a witness place Newman at the murder scene at the relevant time period. There exists competent evidence in the record which supports the district court's decision.

Newman has failed to affirmatively establish the requirements of *Strickland*.[39] Newman's contention that his counsel was deficient for failing to present an alibi defense is without merit.

### Live Testimony

Lastly, Newman argues, without supporting authority or citation to the record, that the district court erred in not receiving the alibi testimony through live witnesses rather than via deposition. Newman's argument suggests he was somehow prevented from establishing a credible defense because the court had to weigh his deposition evidence against the live trial testimony of Herrera-Gutierrez. However, Newman failed to articulate any argument as to why the court's analysis was legally improper or how presenting the alibi evidence through live testimony would have made a difference given the strength of the evidence. Appellants are required to point

---

[38] See, e.g., *U.S. v. Dyess*, 730 F.3d 354 (4th Cir. 2013); *Dixon v. Warden, Southern OH Correctional Facility*, 940 F. Supp. 2d 614 (S.D. Ohio 2013); *Ortiz v. Barkley*, 558 F. Supp. 2d 444 (S.D.N.Y. 2008).

[39] See, *Strickland, supra* note 12. See, also, *Gavin, supra* note 31.

out the factual and legal bases that support their assignments of error.[40]

The procedures a district court uses in evaluating a postconviction action are reviewed for an abuse of discretion.[41] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[42] But the district court's discretion must comport with the specific procedural rules mandated by Neb. Rev. Stat. § 29-3001 (Reissue 2016).[43]

Section 29-3001(3) explicitly authorizes the court to receive "[t]estimony of the prisoner or other witnesses . . . by deposition." Additionally, the weight to be accorded to testimony given by deposition, as compared to that given orally in court, must depend, not upon its form, but upon all the circumstances affecting its credibility.[44] As discussed, there is evidence in the record which supports the court's credibility findings regarding the deposition testimony of the alibi witnesses. The court did not err in denying Newman's request for live witnesses at the evidentiary hearing.

Newman's appeal is without merit.

CONCLUSION

The order of the district court dismissing Newman's motion for postconviction relief is affirmed.

AFFIRMED.

HEAVICAN, C.J., and FREUDENBERG, J., not participating.

---

[40] *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

[41] See *State v. Glover*, 276 Neb. 622, 756 N.W.2d 157 (2008).

[42] *Id*.

[43] *Id*.

[44] *Russell, supra* note 36.