IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BORER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHANE C. BORER, APPELLANT.

Filed February 25, 2025.    No. A-24-109.

Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Affirmed.

Shane C. Borer, pro se.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

MOORE, BISHOP, and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Shane C. Borer appeals from the order of the district court for Cass County, which denied his motion for postconviction relief without an evidentiary hearing. On appeal, Borer assigns error to the court's denial of his postconviction motion without an evidentiary hearing and to the court's denial of his request to declare the Nebraska Postconviction Act unconstitutional as applied to him. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

### 1. CONVICTION AND DIRECT APPEAL

Following a bench trial in April 2021, Borer was convicted of burglary, possession of methamphetamine, and theft by receiving stolen property with a value of more than $500 but less than $1,500. The evidence at trial established that in August 2020, Janis Hennings and Gary DeVos resided in a house in Louisville, Nebraska. On the morning of August 9, Hennings discovered a

shoeless man, later identified as Borer, standing in the kitchen holding a bag of donuts she had previously left on the counter. Hennings yelled at the man to get out of the house and called for DeVos. By the time DeVos arrived, the man had run down the stairs into the basement, apparently leaving by an exterior basement door. Hennings and DeVos observed items strewn around the basement that did not belong to them and evidence of someone having used one of their towels to clean up.

When law enforcement arrived and inspected the basement, a police officer noted pry marks and damage to the strike plate on the exterior basement door, which DeVos indicated had not been there previously. Items observed in the basement that did not belong to Hennings and DeVos included two backpacks, several sets of keys, wet clothing hanging from an I-beam, a wet pair of shoes, and a wallet containing Borer's driver's license. When the officer searched one of the backpacks, he located a glass pipe containing methamphetamine residue. Hennings and DeVos denied ownership of the glass pipe, and Hennings denied using methamphetamine. A drinking glass belonging to Hennings and DeVos was found in the basement, partially full of water. Hennings and DeVos denied taking the glass into the basement. Another one of their drinking glasses was later found outside by a neighbor. Hennings and DeVos denied placing the glass outside, and Hennings indicated she had not given the glass to the neighbor. Hennings and DeVos also later located a camera that had been removed from a desk drawer in their spare bedroom and denied having removed the camera from the drawer themselves.

While one police officer was with Hennings and DeVos on the morning in question, another officer observed a man matching the burglary suspect's description and later identified as Borer at an intersection about one block away from the residence. Borer was standing next to a car without any license plates and was loading items into the car's trunk. When asked where he was staying, Borer pointed in the direction of the Hennings and DeVos residence and claimed that a woman named Hannah was allowing him to stay there. He also claimed that someone had stolen his shoes and that his driver's license was in the car's center console. Police identified the car as one that had previously been stolen from a construction job site along with some electronics and hand tools. When police recovered the car from Borer, it was filled with trash, debris, clothes, and other items including some blank checks, none of which belonged to the car's owner. At trial, the car owner identified one of the backpacks recovered from the burglary scene and some work gloves found inside the backpack as items that had been stolen from him. The car owner denied ownership of the glass pipe with methamphetamine residue also found in the backpack, and he indicated that he did not use drugs. The evidence at trial established values for the backpack and car.

After trial, the district court found Borer guilty as indicated above. The court also found Borer to be a habitual criminal and sentenced him to concurrent terms of imprisonment of 12 to 15 years for burglary, 10 to 10 years for possession of methamphetamine, and 1 year for theft by receiving.

On direct appeal, Borer claimed that the district court erred in finding sufficient evidence to convict him of burglary, possession of methamphetamine, and theft by receiving. Borer also claimed that he received ineffective assistance of trial counsel when his counsel failed to (a) advise Borer of the deadline for a new trial motion, (b) call Borer as a witness at trial, (c) investigate, find, or subpoena Hannah, (d) test items for DNA or fingerprints, and (e) move for a mistrial. This court found the evidence sufficient to support Borer's convictions. We found the record

insufficient on direct appeal to address Borer's claims about his trial counsel's alleged failures to call Borer as a witness; to investigate, find, or subpoena Hannah; and to test items for DNA or fingerprints. Borer's other claims of ineffective assistance of trial counsel were refuted by the record. Accordingly, we affirmed Borer's convictions and sentences. See *State v. Borer*, No. A-21-720, 2022 WL 4476023 (Neb. App. Sept. 27, 2022) (selected for posting to court website). We note that Borer was represented at the trial level, successively, by two separate attorneys. The first attorney withdrew about a month prior to trial; the second attorney was then appointed and represented Borer through sentencing. On direct appeal, Borer was represented by different counsel than either trial counsel.

## 2. POSTCONVICTION PROCEEDINGS

On October 20, 2023, Borer, now self-represented, filed a motion for postconviction relief, setting forth 16 claims for relief. In his motion, Borer set forth a detailed recitation of his version of events prior to his arrest, including his borrowing the car in question from a "friend named Mike" and his interactions with a woman named "Hannah" whom he claimed invited him into the Hennings and DeVos residence via the basement door. Borer also set forth allegations of his interactions with trial counsel and various claims of ineffective assistance of trial and appellate counsel. In his sixteenth claim for relief, Borer sought a declaration that the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2016 & Cum. Supp. 2024) "as-applied to [him] and all similarly situated [self-represented] postconviction movants" is unlawful and violates his due process and equal protection rights under the U.S. Constitution and the Nebraska Constitution.

On October 26, 2023, the district court entered an order, giving the State until January 5, 2024, to file a response to Borer's postconviction motion. The State filed a response, asking the district court to dismiss Borer's postconviction motion without an evidentiary hearing.

On January 17, 2024, the district court entered an order, denying Borer's motion for postconviction relief without an evidentiary hearing. In addressing Borer's claims, the court determined that they were either procedurally barred, refuted by the record, or did not otherwise warrant an evidentiary hearing. Borer subsequently perfected his appeal to this court.

## III. ASSIGNMENTS OF ERROR

Borer asserts that the district court erred in (1) denying his motion for postconviction relief without an evidentiary hearing and (2) denying him a declaratory judgment as to the constitutionality of § 29-3001 et seq. as applied to him.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Goynes*, 318 Neb. 413, ___ N.W.3d ___ (2025).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which an appellate court reviews independently of the lower court's ruling. *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023).

## V. ANALYSIS

### 1. DENIAL OF POSTCONVICTION MOTION
### WITHOUT EVIDENTIARY HEARING

Borer asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. In his motion, Borer set forth 16 separate claims, alleging ineffective assistance of trial counsel (claims Nos. 1-9), alleging ineffective assistance of appellate counsel (claims Nos. 10-15), and seeking declaratory relief (claim No. 16). On appeal to this court, Borer presents arguments with respect to each of those claims. We have addressed Borer's arguments with respect to his claim for declaratory relief below in our analysis of his second assignment of error. Before addressing Borer's arguments with respect to his claims of ineffective assistance of trial and appellate counsel, we first set forth the general principles of law applicable to our analysis.

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Davis*, 317 Neb. 59, 8 N.W.3d 247 (2024). The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *State v. Goynes, supra*. An evidentiary hearing is required on a motion for postconviction relief unless: (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The likelihood of a different result must be substantial, not just conceivable. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). The two prongs of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Cox, supra*.

### (a) Ineffective Assistance of Trial Counsel

#### *(i) Procedurally Barred*

In his first through ninth postconviction claims, Borer raised claims of ineffective assistance of trial counsel. Out of these claims, only claim No. 1 (alleging his trial counsel's failure to investigate, interview, subpoena, and call Hannah as a witness), claim No. 2 (alleging his trial counsel's failure to test items for DNA or fingerprints), and claim No. 3 (alleging his trial counsel's

failure to abide by Borer's desire to testify on his own behalf) were also raised on direct appeal. Borer's claims Nos. 4 through 9 are procedurally barred because they were not brought on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025).

### (ii) Raised on Direct Appeal

Borer's claims Nos. 1-3 were raised on direct appeal but were not addressed by this court due to the insufficiency of the record on direct appeal. We note that our findings on direct appeal do not mean that Borer is necessarily entitled to an evidentiary hearing upon raising these same issues in his postconviction motion. See *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019) (finding on direct appeal that existing record is insufficient to determine claim of deficient conduct does not speak to whether existing record will be sufficient to affirmatively refute prejudice once claim is alleged on postconviction).

### a. Failure to Call Hannah as Witness

In his postconviction claim No. 1, Borer alleged that his trial counsel was ineffective for failing to investigate, interview, subpoena, and call Hannah as a defense witness at trial. The district court found that Borer's conclusory allegations did not warrant an evidentiary hearing. Borer previously assigned error on direct appeal to his trial counsel's failure to investigate, find, or subpoena Hannah. We noted the record showed that Borer told law enforcement he had been given permission to stay at the residence where the burglary occurred by a woman named "Hannah." The record was insufficient, however, to address the claim on direct appeal.

In his postconviction motion, Borer alleged that on the date of the burglary, he was in the process of moving, borrowed a car from "a friend named Mike," loaded the borrowed car with his belongings, and at some point, got "lost," "almost ran out of gas," and ended up at a gas station in Louisville. Borer further alleged that while at the gas station, he "got gasoline all over himself," met a woman who introduced herself as "'Hannah,'" and that Hannah invited him to spend time with her. According to Borer's allegations, Hannah ended up inviting him into the residence where the burglary occurred via "the back door." Once inside the residence, Hannah allegedly invited Borer to clean up and gave Borer one of two glasses of water she retrieved from upstairs before leaving. Borer alleged that he then cleaned his clothes and shoes because they still smelled like gasoline and that while waiting for Hannah to return, he "went upstairs for a snack," where he then picked up a package of donuts and shortly thereafter encountered Hennings.

In his postconviction claim No. 1, Borer alleged that if his trial attorneys had investigated and interviewed Hannah, they would have discovered her last name or identity and that if his second trial attorney had called Hannah as a witness, she would have testified to facts supporting the version of events set forth in Borer's motion, and there is a reasonable probability that he would have been acquitted of all charges. The district court found that Borer's allegations were conclusory and did not warrant an evidentiary hearing.

We agree that this claim did not warrant an evidentiary hearing. Although Borer provided a physical description of Hannah and set forth information she would have allegedly testified to if called at trial, he did not explain in his motion how his trial attorneys could have located her without any identifying information beyond the physical description and her first name. Even if Hannah had been located, called as a witness, and testified as indicated by Borer, he does not allege that she actually had authority to invite him into the residence in question, and the record does not support a conclusion that she had such authority. Both Hennings and DeVos testified at trial that they did not know a person named Hannah. There was sufficient circumstantial evidence to allow the trial judge to conclude that Borer committed burglary and possessed methamphetamine, regardless of any testimony by Hannah. And, any testimony by Hannah would have been immaterial to a finding of guilt on the charge of theft by receiving. The district court did not err in denying claim No. 1 without an evidentiary hearing.

b. Failure to Test Items for DNA or Fingerprints

In his postconviction claim No. 2, Borer alleged that his trial counsel was ineffective for failing to request either DNA or fingerprint testing of the camera, glass pipe, and drinking glasses located at the Hennings and DeVos residence. Borer previously assigned error on direct appeal to his trial counsel's failure to test various items for DNA or fingerprints. We found the record insufficient to address the claim.

In his postconviction motion, Borer alleged that his trial attorneys were ineffective for failing to request either DNA or fingerprint testing of the camera, glass pipe, and drinking glasses, from the Hennings and DeVos residence. Borer argues that, had his attorneys requested such forensic testing, the results would have established that Borer's DNA and/or fingerprints were excluded from the camera and glass pipe and that his DNA and/or fingerprints were included on one of the drinking glasses, while Hannah's DNA and/or fingerprints were included on both drinking glasses. Borer argues that there is a reasonable probability that the forensic testing results would have refuted or discredited the State's version of events and the trial court "most likely" would have acquitted him on all counts.

Borer has not shown that his trial attorneys were ineffective for failing to request DNA and/or fingerprint testing of the camera, glass pipe, and water glasses. First, Borer does not allege that the camera and water glasses were collected as evidence and properly preserved for testing. Second, a lack of Borer's DNA or fingerprints on the glass pipe and camera would not establish that he did not touch these items; he simply may not have transferred any identifiable fingerprints or DNA. See *State v. Jacob*, 309 Neb. 401, 960 N.W.2d 327, *modified on denial of rehearing* 310 Neb. 157, 964 N.W.2d 252 (2021) (nonpresence of individual's DNA profile in biological sample does not preclude individual from having been present or in possession of item tested; it merely shows that individual's DNA was not present in specific sample tested). And, the presence of a fingerprints and/or DNA belonging to someone other than Borer, Hennings, or DeVos, on the other glass would only show that someone else had touched that glass. It would not establish the identity of the mysterious Hannah, absent a reference sample of her DNA and/or fingerprints. There was sufficient circumstantial evidence to establish Borer's possession of methamphetamine and burglary of the Hennings and DeVos residence regardless of the results of any forensic testing.

Borer has not shown that any such testing by his trial attorneys would have changed the results of the trial. The district court did not err in denying an evidentiary hearing on claim No. 2.

### c. Failure to Call Borer as Witness

In his postconviction claim No. 3, Borer alleged that his second trial attorney was ineffective for failing to abide by his desire to testify on his own behalf. On direct appeal, Borer assigned error to his trial counsel's failure to call him as a witness. We found the record insufficient to address the claim. The State argues that claim No. 3 differs from the claim Borer raised on direct appeal and is procedurally barred. The district court, however, treated claim No. 3 as having been raised on direct appeal and preserved for postconviction review, although it found Borer's postconviction allegations too conclusory to merit an evidentiary hearing. We have addressed Borer's arguments below, and regardless of whether this claim differs from the similar claim he raised on direct appeal, we agree that his postconviction allegations were insufficient to merit an evidentiary hearing.

In his postconviction motion, Borer notes that the right to testify is personal to the defendant and cannot be waived by defense counsel, and he argues that he was willing to testify despite his previous convictions. Borer argues further that, if called as a witness, he would have testified to meeting a woman named Hannah earlier in the evening of August 8, 2020, that this woman invited him to what he thought was her house or her parents' house, that she led him to and let him into the Hennings and DeVos residence, and that he entered with no intent to commit a felony or steal anything of value. He also argues that he would have testified he did not bring the backpack containing methamphetamine in the residence and did not know there was methamphetamine present. Finally, he argues that he would have testified he borrowed the car in question from his friend Mike who repairs cars and did not know that this car had been stolen. Borer argues that had his second trial attorney called him as witness, there is a reasonable probability that his testimony would have refuted the State's version of events, and the court most likely would have acquitted him on all counts.

A defendant has a fundamental constitutional right to testify, and the right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Id.* Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable. *Id.*

Beyond vague assertions that his second trial attorney failed "to give Borer a chance to explain his side of the story" and thus "submi[t]ted [Borer] to the State's version of events," Borer does not specifically allege facts that show his second trial attorney's interference with his freedom to decide to testify, any advice given by his attorney, or how that advice was unreasonable.

Borer's postconviction motion presents his purported testimony of his version of events, but his allegations are insufficient to show a reasonable probability that the outcome would have been different but for the failure to call him as a witness. There was evidence presented at trial about Borer's version of events. The detective who encountered Borer next to the stolen car, asked

Borer where he was staying. According to the detective's testimony, Borer pointed in the general direction of the Hennings and DeVos residence and claimed that a woman named Hannah was allowing him to stay there. Borer was not wearing any shoes and claimed that his shoes had been stolen. He also claimed that his driver's license was located in the car's center console. The evidence showed that the driver's license, as well as Borer's wallet, were found in the basement of the residence. A pair of wet shoes were also among the items located in the basement. Hennings and DeVos denied knowing someone named Hannah. If Borer's second trial attorney had called him as a witness, he would have been required to explain these inconsistencies between his testimony and that of other witnesses and to explain why the stolen car in his possession contained various items belonging to other people. He would have also been confronted with his prior convictions. Borer has not shown that his second trial attorney's decision not to call him as a witness and/or advice not to testify was unreasonable.

The district court did not err in denying an evidentiary hearing on claim No. 3.

### (b) Ineffective Assistance of Appellate Counsel

In his postconviction claims Nos. 10 through 15, Borer raises allegations of ineffective assistance of appellate counsel, arguing that his appellate counsel was ineffective in failing to assign as error on direct appeal that his trial counsel was ineffective in various regards. This postconviction proceeding was Borer's first opportunity to assert the ineffectiveness of his appellate counsel. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021). When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on direct appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id.*

### (i) Failure to Investigate Actual Innocence

Claim No. 10 alleges that Borer's appellate counsel was ineffective for failing to assign error on direct appeal to the failure of both trial attorneys to communicate adequately with him, disclose discovery to him, and investigate his actual innocence. Borer argues that investigation by his trial attorneys would have revealed that he had borrowed the car from his friend "Mike," he had no knowledge the car was stolen, he met a woman named "Hannah" earlier in the evening who invited him to what he thought was her parents' house, she let him into the residence in question, he entered with no intent to commit a felony or steal anything of value, he did not bring the backpack with the methamphetamine into the residence, the backpack and glass pipe belonged to a woman because they were located with makeup, and he had no knowledge of the presence of methamphetamine or the glass pipe located at the residence. Borer argues that if his trial attorneys had adequately communicated with him, disclosed discovery to him, and investigated his actual innocence, they would have been able to completely present his defense or subject the State's case to meaningful adversarial testing, and Borer most likely would have been acquitted on all counts.

Borer's allegations do not establish deficient performance by his trial attorneys. He alleges that his attorneys rarely took his calls during the pendency of the case and refused to hear his version of events. He does not allege that his attorneys failed to meet with him in person. The factual allegations set forth in Borer's postconviction motion state that his first attorney presented him with three different plea offers from the State, which suggests that she did discuss the case with him. And, a review of the second attorney's cross-examination of the State's witnesses at trial and his closing arguments show that he was aware of Borer's version of events. Borer does not identify any discovery that was not disclosed to him, and he does not explain how access to any such undisclosed discovery would have changed the outcome of the trial. Borer cannot show his trial attorneys were ineffective for failing to communicate with him, disclose discovery to him, and investigate his actual innocence or that his appellate counsel was ineffective in failing to raise this claim on direct appeal. The district court did not err in denying claim No. 10 without an evidentiary hearing.

### (ii) Advising Borer to Waive Jury Trial

Claim No. 11 alleges that Borer's appellate counsel was ineffective for failing to assign error on direct appeal to his second trial attorney's ineffectiveness for advising Borer to waive his right to a jury trial. Borer argues that because of his second trial attorney's ineffective assistance, he was denied his constitutional right to a jury trial.

The decision to waive a jury trial is ultimately and solely the defendant's, and, therefore, the defendant must bear the responsibility for that decision. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). Counsel's advice to waive a jury trial can be the source of a valid claim of ineffective assistance only when (1) counsel interferes with the client's freedom to decide to waive a jury trial or (2) the client can point to specific advice of counsel so unreasonable as to vitiate the knowing and intelligent waiver of the right. *Id.* Borer does not suggest his second trial attorney interfered with his freedom to decide whether to waive a jury, arguing only that his second trial attorney "failed to render effective assistance of counsel by advising Borer to waive his rights to a trial by jury."

Borer argues that prior to his waiver, his second trial attorney advised him that it "was better to have a judge decide guilt/innocence" because a judge is "'a professional'" and "confusion would result if twelve people were required to decide guilt/innocence." He also argues that his second trial attorney failed to advise him that a jury's verdict must be unanimous and that if even one juror was unconvinced of his guilt beyond a reasonable doubt, there would be a mistrial. The Nebraska Supreme Court rejected a claim with similar assertions in *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198 (2011) (finding trial counsel's alleged statements as to relative merits of trying case to court as opposed to jury did not constitute unreasonable advice so as to vitiate knowing and intelligent waiver of right to jury trial).

Borer appears to have waived his right to a jury trial at some point after the appointment of his second trial attorney in March 2021 (record includes a December 2020, order scheduling a jury trial for February 17, 2021, and an April 1 order scheduling a bench trial for April 14-15). Borer does not allege that he was not advised of his right to a jury trial by the trial court at some point prior to his waiver. Nor does Borer specify what advice his first trial attorney may have given with respect to having a jury trial. Borer does not allege that either of his trial attorneys interfered

with his freedom to decide. Borer agrees that he waived the right to a jury trial, which decision was his to make. His second trial attorney's alleged advice was not unreasonable. The district court did not err in denying claim No. 11 without an evidentiary hearing.

*(iii) Failure to Investigate and Subpoena Surveillance Video*

Claim No. 12 alleges that Borer's appellate counsel was ineffective for failing to assign error on direct appeal to the failure of both trial attorneys to investigate and subpoena August 8-9, 2020, surveillance video from the gas station in Louisville where Borer claims to have stopped before being admitted by Hannah to the house where the burglary occurred. Borer argues that if his trial attorneys had obtained surveillance video for those dates from the gas station and surrounding businesses, they would have discovered Hannah's identity, and the videos would have corroborated Borer's version of events. Borer argues that had his trial attorneys obtained such surveillance video, there is a reasonable probability that the videos would have refuted the State's version of events, created reasonable doubt in the trial judge's mind, and he would have likely been acquitted of all charges.

Borer alleges as a conclusion of fact that there was surveillance video of his alleged encounter with a woman named Hannah at the gas station. But, even if such video existed and had been obtained by his trial attorneys, it would have shown, at most, that Borer had contact with a woman at the gas station. It would not have revealed her alleged invitation to him or shown the events that occurred at the Hennings and DeVos residence. It is highly unlikely that any such video would have revealed Hannah's identity, and as noted by the State, even if it had, this individual could not have been compelled to testify in Borer's favor. Borer has not shown that he was prejudiced by his trial attorneys' failure to locate any surveillance video. Borer's allegations with respect to his trial attorneys' alleged failure to investigate and obtain such video were too speculative in nature to warrant an evidentiary hearing.

Because Borer cannot show that his trial attorneys were ineffective for failing to investigate and subpoena surveillance video, he cannot show that his appellate counsel was ineffective for failing to raise this claim on direct appeal. The district court did not err in denying claim No. 12 without an evidentiary hearing.

*(iv) Failure to Call Landlord as Witness*

Claim No. 13 alleges that Borer's appellate counsel was ineffective for failing to assign error on direct appeal to the failure of both trial attorneys to investigate, interview, subpoena, and call Paul Wiles (landlord for Hennings and DeVos) as a defense witness. He argues that investigation of and testimony from Wiles would have shown that the pry marks and damage to the strike plate seen by police on the basement door to the residence had existed prior to Hennings and DeVos moving in and that Hannah had a key or access to a key to the residence. Borer argues that if his attorneys had investigated and called Wiles as a witness, Borer most likely would have been acquitted on all charges.

We note that counsel need not interview every possible witness to have performed proficiently. See *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021). Wiles' testimony would have been immaterial to a finding of guilt on the charges of possession of methamphetamine and theft by receiving. And, as to the burglary charge, Hennings and DeVos denied knowing anyone

named Hannah and DeVos testified that the marks on the basement door had not been there prior to the day in question. DeVos testified that the landlord replaced the lock on the basement door the day after the break-in. Hennings testified that her adult daughter and Wiles were the only other individuals that had keys to the residence prior to the burglary. There was sufficient other circumstantial evidence to support Borer's conviction for burglary, regardless of any testimony by Wiles. Borer cannot show that his attorneys were ineffective for failing to interview Wiles and call him as a witness at trial or that his appellate counsel was ineffective for failing to raise this claim on direct appeal. The district court did not err in denying claim No. 13 without an evidentiary hearing.

### (v) Failure to Obtain Expert Witness

Claim No. 14 alleges that Borer's appellate counsel was ineffective for failing to assign error on direct appeal to the failure of both trial attorneys to investigate, consult, and call a locksmith expert as a defense witness. Borer notes testimony from a police officer at trial about "bump keys" and how "multiple keys can be used as burglary tools." He argues that a locksmith expert "would have testified to the exact number of key combinations" for the particular models of the door and deadbolt locks to the basement door at the residence and would have testified to the unlikelihood of multiple keys being used as a "bump key" to unlock the basement door, given the "high number of different key combinations for this particular model of door lock and deadbolt lock." There was evidence at trial that there were several sets of keys among the items found in the basement that did not belong to Hennings and DeVos, and Borer argues that if he had been called as a witness, he would have testified that he had multiple keys because he worked maintenance at three different hotels.

The conclusory allegations in Borer's motion are insufficient to show that he was prejudiced by his trial attorneys' failure to investigate and call a locksmith as an expert witness at trial. The record shows that the locks to the basement door were changed after the break-in, and Borer does not allege that the locks in question were preserved for examination by a locksmith. And, despite the multiple keys found in the basement following the break-in, the evidence of pry marks around the basement door and damage to the strike plate, suggests that Borer used something other than a bump key to gain access. Borer's allegations do not show that the outcome of the trial would have been different had his attorneys taken these steps suggested in his motion. Because Borer cannot show that his trial attorneys were ineffective, he cannot show that his appellate counsel was ineffective for failing to raise claim No. 14 on direct appeal. The district court did not err in denying this claim without an evidentiary hearing.

### (vi) Failure to Call "Mike" as Witness

Claim No. 15 alleges that Borer's appellate counsel was ineffective for failing to assign error on direct appeal to the failure of both trial attorneys to investigate, interview, subpoena, and call "Mike" (individual from whom Borer allegedly borrowed the car) as a defense witness. Borer alleges that Mike's contact information was in his phone that was in police custody and that investigation of and testimony from Mike would have revealed Mike's last name or identity and would have shown that Mike works on vehicles for a living and that Mike loaned the car in question

to Borer on August 8, 2020. Borer argues that if trial attorneys had investigated and called Mike as a witness, he most likely would have been acquitted on all charges.

As with the previous assignment of error, the conclusory allegations in Borer's motion are insufficient to show that he was prejudiced by his trial attorneys' failure to investigate, interview, and call Mike as a witness. See *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021) (counsel need not interview every possible witness to have performed proficiently). Borer does not allege that he informed his trial attorneys of Mike's contact information or the location thereof, and he does not explain why he does not appear to know Mike's last name. Although Borer alleges that Mike "most likely" would have testified that Borer was unaware that the car was stolen, the relevant issue at trial was Borer's knowledge of the car's status. Mike, like Hannah, could not be compelled to testify in Borer's favor. The district court did not err in denying claim No. 15 without an evidentiary hearing.

### (c) Cumulative Prejudice

In his postconviction motion, as well as in his brief on appeal, Borer also argues that the cumulative prejudicial effect of the deficiencies of both his trial counsel and appellate counsel deprived him of his right to due process of law. We have found Borer's assertions of ineffective assistance of trial and appellate counsel to be procedurally barred, insufficiently pled, or otherwise without merit. Accordingly, Borer's cumulative prejudice argument fails.

### 2. DENIAL OF DECLARATORY JUDGMENT

Borer asserts that the district court erred in denying him a declaratory judgment as to the constitutionality of § 29-3001 et seq. as applied to him. In claim No. 16, Borer set forth a request for declaratory relief, essentially asking the district court to find the Nebraska Postconviction Act unconstitutional as it applied to him as a self-represented litigant. Essentially, he argues that the Act is unconstitutional because self-represented litigants are held to the same standards as attorneys. He argues further that the application of § 29-3001 et seq. "without the liberal civil pleading rules is unreasonable and unquestionably inconsistent with traditional principles of justice and recognized principles of fundamental fairness" and violates the state and federal due process and equal protection rights of Borer and all other similarly situated Nebraska prisoners.

Recently in *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023), the Nebraska Supreme Court observed that postconviction proceedings have their own pleading requirements, and the liberal pleading rules that govern civil actions are inconsistent with postconviction proceedings. In that case, the Supreme Court reaffirmed that self-represented parties are held to the same standards as those who are represented by counsel. See *id.* The district court did not err in denying Borer's request for declaratory relief.

### VI. CONCLUSION

The district court did not err in denying Borer's postconviction motion, including his claim for declaratory relief, without an evidentiary hearing.

AFFIRMED.